## VAUGHN v. STRICKLAND.

1. When both magistrates of a militia district are disqualified from presiding in a given case, any justice of the peace of the county may lawfully preside in the justice's court of that district for the purpose of trying that case.

2. When one party to a case pending in a justice's court makes the point that the magistrate presiding over that court is disqualified, and the other party makes the same point as to the other magistrate of the district, and the case is thereupon tried by a justice from another district of the county "without any objection being made by either side," the losing party is thereafter estopped from denying the authority of the last-mentioned justice to preside in the case, especially after such party has recognized the validity of the judgment by entering an appeal therefrom to a jury in the justice's court.

3. If the magistrate in whose court the case was pending was not in fact disqualified, his declining, under such circumstances as those above indicated, to preside at the first trial did not disqualify him from presiding at the trial on the appeal.

4. Since a landlord's special lien on crops for supplies furnished "may be foreclosed before the debt is due, if the tenant is removing or seeking to remove his crops from the premises," a demand for payment is not, in such a case, an essential prerequisite to the right to foreclose.

5. The evidence warranted the verdict rendered in the magistrate's court, and there was no error in overruling the certiorari.

Submitted June 13, — Decided August 2, 1899.

Certiorari.     Before Judge Gober.     Cobb superior court. September 22, 1898.

*John V. Edge*, for plaintiff in error.

LUMPKIN, P. J.     1, 2.     An execution in favor of Strickland against Vaughn, issued upon an affidavit made by the former, as landlord of the latter, to foreclose a special lien for supplies, was levied on certain farm produce, and Vaughn filed a counter-affidavit in which he, among other things, alleged that the debt thus sought to be collected was not due.     The papers were returned to the justice's court of the 1378th district G. M. of Cobb county.     When the case came on to be tried, Vaughn made the point that Winters, the notary public and ex-officio justice of the peace of that district, in whose court the case was pending, was disqualified; and Strickland made a like point as to Allgood, the justice of the peace of that district.     Both magistrates thereupon declined to preside in the case, and it was, "without any objection being made by either side," tried by Scott, the justice of the peace of the 846th district G. M. of that county.     He rendered a judgment against Vaughn, who entered an appeal to a jury in the same court.     In the light of the conduct of the parties, this was a case to which section

4072 of the Civil Code applied. That section declares that, "When a justice of the peace is disqualified from presiding, and there is no other justice of the peace in his district who is qualified, any justice of the peace of the county is qualified to issue all process and to preside in his district." Each of the parties, by his own objection and by acquiescence in the objection of his adversary, obtained an adjudication that neither magistrate of the district was competent to try the case, and it follows that Vaughn was thereafter estopped from denying that a state of facts rendering Scott competent to preside existed. See *Luther* v. *Clay*, 100 *Ga.* 236. On page 241, Cobb, J., extracts from the opinion of Mr. Justice Brown, in Davis *v.* Waklee, 156 U. S. 689, the following apt statement of the rule which is applicable to Vaughn in the present case: "It may be laid down as a general proposition, that where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." The question in hand is altogether different from that which would have been presented if there had been no provision of law under which Scott would be authorized to preside in the 1378th district, and Strickland and Vaughn had nevertheless undertaken to consent that he might do so. See *Castleberry* v. *State*, 68 *Ga.* 49. Parties can not by consent give jurisdiction to a court which has none. Civil Code, § 5079. This was not such a case. There was no consent about it. The court had jurisdiction of the parties and the subject-matter. The question was, who was to preside therein? Vaughn assumed a position which, in effect, placed him in the attitude of saying that Scott, under the facts which existed, was qualified to do so. He succeeded in having that position maintained, and this was certainly conclusive as to him during the further progress of this same case, whether as matter of law, under such facts, Scott was competent to preside or not. Granting that he was disqualified, Vaughn had no right at the trial on the appeal to so assert. As to him, the question had been settled. We therefore hold that there

was no merit in the point made by him at the trial just mentioned, based on Scott's alleged want of authority to preside outside of his district, that "there was no judgment from which an appeal could be entered, and was no case for the jury."

3. Winters presided at the trial on the appeal. Vaughn again made the point that he was disqualified. The record clearly discloses that he was not and had not at any time been disqualified. We therefore think that Winters did right in presiding at the last trial. The fact that he had at the first trial declined to preside makes no difference. His ruling at that time on the question of his disqualification was erroneous. His ruling on the same question at the trial on the appeal was correct. Both rulings are binding on Vaughn, the first because he invoked it, and the second because it was right.

4. At the trial on the appeal, Vaughn moved to quash the execution, because the affidavit on which it was founded did not allege a demand upon him for payment of the debt which Strickland was thus seeking to collect. This debt, it must be noted, was not due. Vaughn, as already mentioned, swore in his counter-affidavit that it was not due. It follows, of course, that Strickland, at the time he made the affidavit to foreclose his lien, had no right to demand payment from Vaughn. The law certainly does not require any party to do a thing which he can not lawfully do. The demand contemplated by section 2816 of the Civil Code relates to debts which are due. We could cite decisions of this court, almost by the score, to the effect that an affidavit to foreclose a special lien based on the law embraced in this section must affirmatively state that demand for payment was made *after the debt became due*. There is no decision holding that when, under a particular statute so permitting, a foreclosure proceeding is instituted before the maturity of the debt, demand for payment and refusal to pay must be alleged. Such a thing would be anomalous and unreasonable. Strickland based his right to foreclose upon paragraph 3 of section 2800 of the Civil Code, which declares that landlords' special liens for supplies "may be foreclosed before the debt is due, if the tenant is removing or seeking to remove his crops from the premises, or when other legal proc-

ess, not in favor of the landlord nor controlled by him nor levied at his instance or procurement, is being enforced against said crops." There is in Strickland's affidavit an allegation that Vaughn "is removing, and is also seeking to remove, his crops" from the rented premises. Accordingly, Winters, the magistrate, rightly refused to quash the execution. The foundation of this foreclosure was not a refusal by the tenant to pay on demand a debt to his landlord which had become due, but conduct on the part of the tenant calculated to defeat altogether the collection of the landlord's claim.

5. The verdict was against Vaughn, and he sued out a certiorari, making the points above dealt with, and also complaining that the verdict was contrary to the evidence. We find that there was sufficient evidence to support the finding of the jury, and, accordingly, affirm the judgment of the superior court overruling the certiorari.

*Judgment affirmed. All the Justices concurring.*