## 51529. ROYAL MANUFACTURING COMPANY, INC. v. DENARD & MOORE CONSTRUCTION COMPANY, INC.

DEEN, Presiding Judge.

1. "The consent of the parties being essential to a contract, until each has assented to all the terms the contract is incomplete. . ." Code § 20-108. While prior negotiations are merged in a completed written contract (*Blount v. Freeman,* 94 Ga. App. 110 (93 SE2d 820)), and while a simple informal contract, though enforceable, is considered superseded by a formal written contract signed by both parties (*Rushton v. Hall & Brown Wood Working &c. Co.,* 26 Ga. App. 370 (1) (106 SE 196)), it does not follow that an oral contract, if it in fact has been arrived at, is merged into a proposed written agreement

signed by only one party and rejected by the other. Until signed by both parties, the paper is ineffective for any purpose.

2. A contract to erect an addition to a building may be oral, no statute requiring that it be reduced to writing. Bonie v. Griffin, 252 Ala. 299 (40 S2d 870).

3. Proof that a contract on behalf of a nonresident corporation was entered into by its executive vice president does not demand the conclusion that he acted with authority so as to bind the corporation, but this, as well as any issue of ratification by the company if in fact the contract was not authorized, is a question for the jury under the evidence. *Western American Life Ins. Co. v. Hicks,* 135 Ga. App. 90 (217 SE2d 323).

4. The defendant Royal Manufacturing Co., Inc., a nonresident corporation, leased a factory in Washington, Georgia, from S & S Realty Co. for use as a textile mill. The two corporations are to some extent interlocking, in that two named persons were officers and principal stockholders of both corporations and one of them was treasurer of both; however, there is no evidence sufficient to pierce the corporate entities of either. Lewis, manager of the Washington textile plant, called Denard with a request that he call Halperin, executive vice president of Royal, in regard to an addition to the plant which they wanted to build. Denard contacted Halperin on January 12, 1973, and the men looked over the ground and discussed size and materials. Denard prepared a "Scope of Work," including plans and specifications. On February 2 he submitted his proposal, made out to Royal Manufacturing Company with which Halperin understood he was dealing. According to his testimony, which is that most favorable to the verdict, he was never then or later informed that the real contracting party would be the landowner, S & S Realty Co. On February 23 Denard was contacted by Price, in charge of maintenance for Royal, with a request for a further estimate including additional work. It is undisputed that the final submission prepared by Denard was accepted by Price and Halperin at a meeting on March 16 and a price of $120,000 agreed upon. An attorney was designated by all parties to draw up a written contract. On May 30 Lewis

informed Denard that the contract was ready, to go by and sign it and work could be started. Denard signed the contract and commenced ordering materials on June 11. A large proportion of the materials had been delivered at the site and the grading preparatory to raising the structure was finished by July 18 or 23 when Denard was notified that the contract had been rejected by the corporation. (This apparently meant by S & S Company, although Denard understood it to mean Royal, with whom he thought he was dealing. Further, the written contract which was signed by Denard showed "Royal Manufacturing Company, by ————" on the signature sheet and also on the backing, although S & S Realty Co. was designated on the first page as the party of the first part). In support of this position the plaintiff also established that roof repairs were ordered orally by Lewis in March and paid for by Royal; also that Royal took charge and made disposition of a quantity of material delivered to the work site.

While Halperin's sworn statement that he was in charge of sales and manufacturing and "any expansion programs, anything that has to do with the expansion of the business" may not in and of itself establish that Halperin as executive vice president has authority orally to authorize the building of the addition to the factory, the statements may certainly be considered by the jury in relation to his apparent authority to contract, and the acquiescence therein by the defendant corporation. "The act of one holding himself out as agent in consummating a [contract] for his principal may be ratified by the principal, even if the agent was unauthorized in the first place to make the [contract], and such ratification may be implied from the acts or silence of the principal. Where a principal is informed by his agent of what he has done, unless the principal repudiates the act promptly or within a reasonable time, a ratification will be presumed." *Harris v. Underwood,* 208 Ga. 247 (4) (66 SE2d 332). The oral contract, under Denard's testimony, was arrived at in the middle of March after two months of negotiations; it was not canceled until the middle of July after grading had been finished and a large amount of material (part of which was retained by Royal) had been delivered on the

building site. This may well, in the opinion of the jury, have amounted to acquiescence in the acts of the agent either on the ground of original authority or ratification.

No error appears in the denial of the motion for new trial and for judgment notwithstanding the verdict.

*Judgment affirmed. Quillian and Webb, JJ., concur.*

ARGUED JANUARY 14, 1976 — DECIDED JANUARY 30, 1976 — REHEARING DENIED FEBRUARY 17, 1976 — 

*Westmoreland, Hall, McGee & Warner, John L. Westmoreland, Jr., Lawson E. Thompson,* for appellant. *Orr & Kopecky, W. A. Orr,* for appellee.