### LUTHER *v.* CLAY *et al.*

1. Where in the trial of a litigated case a party procured from the presiding judge a ruling or decision that a given judgment was valid and legal, and as a result that case was adjudicated in favor of such party, he was, in subsequent litigation with the same adverse party, estopped from denying the validity or legality of the judgment in question.

2. Where a plaintiff had obtained a judgment, and after the death of himself and his sole heir an execution was issued in favor of the latter's legal representative, it was not, at the instance of a claimant of property levied on under such execution, a good ground of objection to its admissibility in evidence on the trial of the claim case, that an order directing such execution

to issue had been granted without service upon or notice to the defendant in the judgment.

3. An agreed statement of facts upon which a case was tried by a judge without a jury, though not thereafter absolutely binding and conclusive upon the parties thereto in a jury trial of another case between them involving the same issues, was in such trial admissible in evidence at the instance of one against the other, subject to the latter's right to disprove, rebut, or explain any statement therein contained.

4. The rights of a mortgagee who merely handed the mortgage to the mortgagor at his request, and for the purpose of inspection only, are in no way affected by the latter's secretly and fraudulently substituting in its place a copy thereof, abstracting the original, and forging upon it an entry of satisfaction, by means of which he procured the record of the mortgage to be cancelled, it not appearing that the mortgagee, other than as above stated, reposed any trust or confidence in the mortgagor; or delegated to him the performance of any duty with respect to the mortgage; or had any reason to suspect the fraudulent design; or was negligent in not detecting the fraud at the time of its perpetration, or thereafter. In such case, even a bona fide purchaser of the mortgaged premises, though he bought in the honest belief that the mortgage had been actually satisfied, took, nevertheless, subject to its lien.

Argued January 14, 15,—Decided February 22, 1897.

Levy and claim. Before Judge Lumpkin. Fulton superior court. March term, 1896.

*Candler & Thomson*, for plaintiff in error.   *Hillyer, Alexander & Lambdin* and *J. N. Bateman*, contra.

COBB, Justice.

An execution in favor of J. N. Clay, executor of the will of Polly McWilliams deceased, issued upon the foreclosure of a mortgage executed by R. H. Knapp to Robt. Mc-Williams, was levied upon a certain described lot in the city of Atlanta, and a claim thereto was interposed by Mrs. Sadie J. Luther. On the trial a verdict in favor of the plaintiff in execution was directed by the court; the claimant made a motion for a new trial upon various grounds; and the same having been overruled, she filed her bill of exceptions alleging the refusal to grant a new trial as error.

The facts as they appeared upon the trial of the case are as follows: On January 2, 1884, R. H. Knapp executed to Robt. McWilliams a mortgage on certain land in the city of Atlanta, to secure the payment of a note of even date. The mortgage was duly recorded on February 25, 1884, and Mc-Williams took the same to his home, enclosed in an envelope, and placed "it away amongst his papers or archives." In March, 1887, Knapp came to the house of McWilliams, who was a very old man (being nearly eighty years of age), and asked him whether the mortgage in question had ever been recorded, and requested that he be allowed to examine it, stating that he had made enquiry or examination at the record office and had not found it. McWilliams took from his papers the envelope containing the mortgage and handed it to Knapp, who received it and was proceeding to examine to see if the entry of recording was upon it, when McWilliams left Knapp for a few minutes. When he returned Knapp handed him the envelope, stating that it was all right, and McWilliams, supposing that the mortgage was in it, placed it again among his papers, but did not examine it until some time afterward when Knapp had absconded. When Mc-Williams heard that Knapp had left the State, he went to his papers to get the mortgage and in the envelope which had contained the original he found only a copy. The only opportunity for the substitution of this copy was at the time above referred to. Upon investigation the original mortgage was found on file in the clerk's office in Atlanta, and upon it was an entry of cancellation purporting to have been signed by McWilliams, which had been entered upon the record on the 30th day of March, 1887. The entry of cancellation upon the mortgage was a forgery.

Mrs. Luther purchased a part of the land described in the mortgage to McWilliams, for value, after the filing of the forged cancellation with the clerk, and before Knapp ran away. The purchase was made without notice of the fraud perpetrated by Knapp in obtaining possession of the

mortgage and causing a forged cancellation to be filed and entered on the record, and after an examination of the record, and upon the honest belief that the cancellation was authorized and genuine. On May 2, 1887, Robert Mc-Williams filed his petition in the ordinary form in the superior court of Fulton county, praying for the foreclosure of the mortgage. A rule absolute was granted on March 31, 1888. In October, 1888, Robt. McWilliams filed another petition for the foreclosure of the same mortgage. The petition, in addition to the usual recitals, contained the following: "Petitioner further shows that on or about the 24th day of March, 1887, the said R. H. Knapp fraudulently got possession of said mortgage and entered upon its face a cancellation of the same, with authority to the clerk of the superior court of said county to make the record of said mortgage satisfied and settled, the same having been entered of record in Book J, page 483, of the records of mortgages in said clerk's office aforesaid. Petitioner avers that he had no knowledge of said mortgage, at the time it was cancelled and delivered to the clerk aforesaid, being in the hands of said R. H. Knapp; that the entry of settlement made thereon was not made or signed by petitioner nor was it made or signed by his authority or any one authorized by him, and that said entry of settlement and cancellation on said mortgage is a forgery." Pending the foreclosure an order was passed reciting the death of Robt. McWilliams, leaving his wife, Polly McWilliams, as his sole heir, that she had paid all of his debts; and ordering her made party plaintiff in the case. Judgment of foreclosure was entered in the usual form, reciting the death of McWilliams and the making of parties.

J. N. Clay, as executor of the will of Polly McWilliams, filed his petition to the superior court of Fulton county, reciting the first foreclosure of the mortgage above referred to; and that on November 7, 1894, after the death of Robt. McWilliams, the clerk by mistake issued an execution upon

such foreclosure. It was alleged that Polly McWilliams was the sole heir of Robt. McWilliams; that she had paid all of his debts, and that J. N. Clay was her executor. The prayer was, that the execution issued in the name of Robt. McWilliams be quashed, and that a new execution in favor of Clay as executor of Polly McWilliams be issued in lieu thereof. Service of this petition was not made upon the defendant or any other person. On December 21, 1894, in term an order was passed quashing the execution and granting "leave to the petitioner to sue out a fi. fa. in his name as such executor." An execution was duly issued under this order.

1. The execution issued upon the second foreclosure above referred to was levied upon the land embraced in the mortgage, and claims thereto were filed by Mrs. Luther and other parties to different parcels of the lot. The several claim cases were submitted to the judge without the intervention of a jury. Upon the trial claimants objected to the introduction of the second foreclosure proceedings and the execution issued thereon, on the ground that there had been a former foreclosure and that the plaintiff had no right to proceed under the second foreclosure until the first foreclosure had been set aside. The court sustained the objection, ruled out the evidence, and dismissed the levies. The plaintiff in fi. fa. acquiesced in this decision which had been made against him on the motion of the claimants, and proceeded to have the execution upon the first foreclosure issued under the circumstances above recited. When this execution was levied upon the mortgaged premises, claims were again interposed by the parties who were purchasers of the property. Upon the trial of the case now under consideration, in which Mrs. Luther was the claimant, objection was made to the introduction of the first foreclosure proceeding under which the levy in question was made, on the following grounds: first, because at the time of the foreclosure the original mortgage was not in the possession of the plaintiff, but was in the

hands of the clerk of the court, marked cancelled; second, because the judgment of foreclosure was not made at the next term after that at which the rule nisi issued; third, because there was no legal service upon the mortgagor, in that he was not personally served, and there was no service by publication for four months next before the term at which said judgment was rendered.

Under the view we take of the case, it is not necessary for these questions to be considered. Whether they would be well taken or not, if taken advantage of at the proper time, this claimant cannot now be heard to attack the regularity or validity of the first foreclosure. When the levy was made under the second foreclosure, it was upon motion of her counsel that such levy was held to be illegal and dismissed. Having invoked a ruling from the court that the first foreclosure was valid, and this decision having been acquiesced in and acted upon by the party against whom it was made, she cannot be heard to attack the judgment which she obtained and of which she took the benefit, although it may have been an erroneous one.

In the case of Davis v. Waklee, 156 U. S. 689, where a question similar to the one under consideration was before the court, Mr. Justice Brown in the opinion says: "It may be laid down as a general proposition, that where a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."

In the case of Railroad v. Howard, 13 How. 336-7, in delivering the opinion of the court, Mr. Justice Curtis says: "The plaintiff was endeavoring to prove that the paper declared on bore the corporate seal of the Wilmington & Susquehanna Railroad Company. This being the fact to be proved, evidence that the corporation, through its counsel, had treated the instrument as bearing the corporate seal, and

relied upon it as a deed of the corporation, was undoubtedly admissible. . . The defendant not only induced the plaintiff to bring this action, but defeated the action in Cecil county court, by asserting and maintaining this paper to be the deed of the company; and this brings the defendant within the principle of the common law, that when a party asserts what he knows to be false, or does not know to be true, to another's loss, and to his own gain, he is guilty of a fraud; a fraud in fact, if he knows it to be false; a fraud in law, if he does not know it to be true. . . We are clearly of the opinion that the defendant cannot be heard to say that what was asserted on a former trial was false, even if the assertion was made by mistake. If it was a mistake, of which there is no evidence, it was one made by the defendant, of which he took the benefit, and the plaintiff the loss, and it is too late to correct it."

2. When the first foreclosure was had, the clerk failed to issue an execution as required by law, and after the death of the plaintiff one was issued in his name. After the claimant had succeeded in obtaining a judgment of the court that the second foreclosure was invalid and the first foreclosure was valid, this execution issued in the name of the deceased plaintiff was, upon the ex parte application of the executor of the wife and sole heir of such plaintiff, quashed, and a new execution in his name as executor issued. No notice or service of this application was made upon the defendant in the judgment or any other person. Certainly no one was entitled to notice except the defendant. Ought he to have been served? The issuing of an execution is a mere ministerial act; and while it is not necessary to decide in this case whether an execution issued upon a judgment in favor of the plaintiff after his death is valid, still, if the legal representative of the owner of the judgment sees proper to have by an order of court an execution framed in accordance with the peculiar facts of the case at the time it is issued, we see no reason why notice should be given to the defendant of an

intention to apply to the judge for an order to the clerk to do that which it would seem the clerk would have authority to do without such order. In any event the claimant will not be heard to object to the execution on the ground that it was issued by the order of the judge without notice to the defendant, unless she alleges some valid reason why the judge should not have passed the order. No such reason appears in the present case. Civil Code, §§3354, 3355.

3. When parties to a case agree to submit the same for decision upon an agreed statement of facts and nothing is said in the agreement to the contrary, each party is absolutely bound and concluded by the statements of fact thus agreed to, so far as the trial in which the stipulation is made is concerned. Where the agreement is not expressly limited to use in the trial in which it is made, it is admissible in evidence as an admission in any other trial or litigation between the same parties where the same issues are involved, but it is not absolutely binding and conclusive upon the parties. When it is used against such parties in another trial of the same case or in any other case, either party has the right to attack any statement of fact made therein, either by disproving or rebutting the same, or explaining it away. If parties enter into an agreed statement as to the facts in a case and do not desire such statement to be used against them thereafter, they should distinctly stipulate to that effect. There being nothing in the agreed statement of facts which was introduced in this case to indicate that it was intended to apply only to the former litigation, the court did not err in allowing it to be introduced in evidence. Especially would this be no error in the present case where there was no effort made to attack any statement of fact made therein, and the claimant's case absolutely depended upon facts set forth in the agreement.

4. The controlling question in this case arises out of the assignment of error which complains of the directing of a verdict for the plaintiff in execution. Was this erroneous

under the facts as they appear in the record? The contest was between a mortgagee who was the victim of a theft of the mortgage and a forged cancellation of the same entered upon the record, and the purchaser who bought in good faith, believing that the cancellation as it appeared of record was genuine and authorized.

That title to property cannot be taken away by theft is a principle well settled. The seller can convey no greater title than he himself possesses. Civil Code, §3538; Schouler's Personal Prop., 3d ed. vol. 2, §19. It is equally well settled that an owner of property will not be deprived of his right to the same by the commission of a forgery; and this is true even where the claimant under the forged instrument had no notice of the forgery and honestly believed that it was valid and genuine. Sampeyreac & Stewart *v.* U. S., 7 Pet. 22-240; Van Amringe *v.* Morton, 4 Wharton (Pa.) 382; D'Wolf *v.* Haydn, 24 Ill. 525; Arrison *v.* Harmstead, 2 Pa. St. 191; Wallace *v.* Harmstead, 44 Pa. St. 492; Gray *v.* Jones, 14 Fed. Rep. 83; Reck *v.* Clapp, 98 Pa. St. 581-6. In the case of Telegraph Company *v.* Davenport, 97 U. S. 372, which was a suit in equity to compel the defendant, a corporation, to replace in the name of the appellants certain shares of capital stock alleged to have belonged to them, and to have been transferred without their authority on its books to other parties, the transfer having been made under a forged power of attorney, Mr. Justice Field, speaking for the court, says: "In many instances they [officers of the corporation] may be misled without any fault of their own, just as the most careful person may sometimes be induced to purchase property from one who has no title, and who may perhaps have acquired its possession by force or larceny. Neither the absence of blame on the part of the officers of the company in allowing an unauthorized transfer of stock, nor the good faith of the purchaser of stolen property, will avail as an answer to the demand of the true owner. The great principle that no one can be deprived of his property without his

assent, except by the processes of law, requires in the cases mentioned that the property wrongfully transferred or stolen should be restored to its rightful owner. The maintenance of that principle is essential to the peace and safety of society, and the insecurity which would follow any departure from it would cause far greater injury than any which can fall, in cases of unlawful appropriation of property, upon those who have been misled and defrauded."

As the conduct of Knapp included both a theft of the mortgage and a forgery of the cancellation, it appears clearly from the authorities cited, that by these wrongful acts on his part, McWilliams, the true owner of the mortgage, was not deprived of his right of property therein. But it is contended that McWilliams was negligent in allowing Knapp to have possession of the mortgage and that by this negligence, together with a failure on his part to examine the envelope after Knapp had returned it to him, he put it in the power of Knapp to perpetrate this fraud upon Mrs. Luther. The doctrine that where one of two innocent persons must suffer, the loss must fall upon him who has placed it in the power of the wrong-doer to bring about the injury, is invoked for the protection of the claimant in this case. This doctrine is not applicable in a case like the one now under consideration. Under the facts as they appear in the record, there was no such trust or confidence placed by McWilliams in Knapp in allowing him in his absence to have possession of the papers as would authorize the application of the doctrine above referred to. There is nothing in the evidence to indicate that McWilliams was put on notice of any fraudulent intent on the part of Knapp. There was no relation, confidential or otherwise, between McWilliams and Knapp, which could mislead any one into the belief that Knapp was authorized by McWilliams to cancel the mortgage and have the cancellation entered upon the record. It is simply a case of one person surreptitiously getting into possession of the paper of another and using it in an unauthorized and

unwarranted way, and perpetrating a fraud upon the owner of the paper. The fact that another innocent person is also the victim of the fraud is no reason why the owner should be deprived of his property. In no proper sense did the conduct of McWilliams place it in the power of Knapp to commit a fraud upon Mrs. Luther, so as to estop him from enforcing the lien of his mortgage upon the property. Even if the act of McWilliams in allowing Knapp to inspect the mortgage was negligence, it was only negligence in that broad unrestricted sense in which the term is often used, and was not that character of negligence which would be the foundation of an estoppel. Wood *v.* Steele, 73 U. S. 80; *King* v. *Sparks*, 77 *Ga.* 285. In the case of Bangor Electric Light & Power Company *v.* Robinson, 52 Fed. Rep. 520, where two persons having a safety deposit box in common and one of them without authority abstracted therefrom a certificate of stock endorsed in blank belonging to the other, and transferred it to an innocent purchaser for value, where the doctrine above referred to was invoked, Circuit Judge Putnam, in delivering the opinion of the court, says: "The contest at bar relates to the mere negligence of the original holder, and how far this may prevent him from reclaiming his property. At first it occurred to the court that inasmuch as Robinson had seen fit to leave this certificate in such condition as to indicate that somebody was authorized to acquire it and fill in the indorsement, he was barred; but the court is unable to find any authorities sustaining this suggestion, and is compelled to treat this certificate, indorsed in blank and stolen, as it would any other stolen property, aside from strictly negotiable securities."

In the case of Baxendale *v.* Bennett, 3 Q. B. Div. 525, the defendant gave H. his blank acceptance on a stamped paper and authorized him to fill in his name as drawer, and it was returned to the defendant with the blank unfilled, and was placed by him in an unlocked drawer of his writing-table at his chambers, to which his clerk, laundress, and

other persons coming there had access. From this place it was lost or stolen and came into possession of C., who without authority filled in the blank with his name, and in this condition the bill came into the hands of the plaintiff, who was a bona fide purchaser for value, without notice of the fraud. The defendant was held not liable on the bill. Bramwell, L. J., in his opinion says: "But a crime was committed in this case by the stealing of the document, and without that crime the bill could not have been complete, and no one could have been defrauded. Why is not the defendant at liberty to show this. Why is he stopped? What has he said or done contrary to the truth, or which should cause any one to believe the truth to be other than it is? Is it not a rule that every one has a right to suppose that a crime will not be committed, and to act on that belief? Where is the limit if the defendant is estopped here? The defendant here has not voluntarily put into any one's hands the means, or part of the means, for committing a crime. But it is said he has done so through negligence. I confess I think he has been negligent; that is to say, I think if he had had this paper from a third person, as a bailee bound to keep it with ordinary care, he would not have done so. But then this negligence is not the proximate or effective cause of the fraud. A crime was necessary for its completion." In the case of Van Amringe v. Morton, cited supra, where it appeared that a deed executed and acknowledged by the grantor with a blank for the grantee's name was kept by the grantor locked in his drawer, and that he trusted his brother with the key, who, being induced by a third person, surreptitiously took out the deed and filled up the blank, and in this condition a bona fide purchaser for value accepted the deed from the grantee whose name was thus inserted, it was held that the purchaser stood in no better position than the fraudulent holder, and that no title passed.

In the case of Arrison v. Harmstead, cited supra, where a conveyance reserving a rent in fee was altered by the

insertion of material words after delivery by the agent of the grantor, it was held that the effect of the fraudulent alteration was to avoid the covenants reserving rents and to preserve the fee simple to the innocent grantee discharged from the covenants in the deed, and that the innocent purchaser from the fraudulent grantor would not be entitled to collect the rents reserved. Rogers, J., in the opinion says: "It is said that Mrs. Lewis is a bona fide purchaser without notice, and that the action may be sustained on that ground. But conceding that she is, her situation is no better than the fraudulent grantor's. Although the title of the grantor was, in its inception, good, it became absolutely void by matter ex post facto. At the time of the assignment, the title being avoided, the assignor had nothing to convey; of course nothing passed to the assignee. It may be, and perhaps is, a hard case. Fraud may be committed on an innocent purchaser, who may find it difficult to guard against imposition. This is conceded; but it is far better to encounter this risk, than to give the least countenance to any alteration whatever of a solemn instrument of writing, which would certainly be the result, if the guilty party could escape the consequences of his fraud by a transfer, real or pretended, to a person who might assume the garb of an innocent purchaser for a valuable consideration. We cannot lay too many restraints on trick, artifice and fraud."

This is no doubt a hard case upon Mrs. Luther. To hold that she is protected would be equally hard upon the estate of McWilliams. Under the view we take of the matter McWilliams was not guilty of any such negligence as would deprive him of any of his legal rights; indeed he seems to have done no more than an ordinarily prudent person would have done under similar circumstances; and following the authorities, which seem to be conclusive upon the subject, we hold that the purchaser from Knapp, although she purchased in good faith, without notice of the fraud and forged cancellation by him, and in the honest belief that the forged

cancellation was valid, took the property subject to the lien of the mortgage.

*Judgment affirmed. All the Justices concurring.*