HARRIS *v.* UNDERWOOD *et al.*

HAWKINS, Justice. This is the second appearance of this case before this court. On the first appearance it was decided that, since one of the defendants admitted being indebted to the plaintiff in a stated amount, and the plaintiff was entitled under this admission to some of the the relief prayed for, it was error to grant a nonsuit. Reference to that decision is made for a statement of the nature and character of

the plaintiff's petition, the answers of the defendants thereto, and the issues thus raised. *Harris* v. *Underwood,* 206 *Ga.* 243 (56 S. E. 2d, 287). The case is now before the court on exceptions by the plaintiff to the direction of a verdict in favor of the plaintiff against the defendant Underwood only for the sum which Underwood admitted owing to the plaintiff, and the granting of a nonsuit as to the defendant Linder. The record now before the court discloses that the alleged contract for the sale of the land involved—being a lot 50 by 150 feet, located on Warner Street, in Fulton County, Georgia—was made May 17, 1948. The plaintiff introduced in evidence a quitclaim deed, from Claxton Underwood (one and the same person as C. H. Underwood) to the defendant Raymond Linder, which was dated August 27, 1947, but was not filed for record until January 29, 1949, conveying a one-half undivided interest in the land involved, and also a quitclaim deed from C. H. Underwood and T. J. Robinson Jr. to Raymond Linder, dated June 11, 1948, conveying the land involved. On the trial the plaintiff testified: that, on May 17, 1948, the defendant Underwood represented to him that he and Linder owned the property jointly, and agreed to sell it to him for $2250; that he paid $750 as a down payment to Underwood by check, written by Underwood and signed by Harris, upon which Underwood made an entry as follows: "50' x 150'— Warner No. 806—Down payment on lot," with the agreement that the plaintiff would pay the balance in a stated manner by the execution of certain notes; that Underwood stated to him at the time that his co-owner had agreed to the sale, and that he, Underwood, would later fix up the notes; that, failing to do this after several requests by the plaintiff, Underwood later informed him that Linder had subsequently sold the lot to another for a better price than that agreed upon between the plaintiff and Underwood, and declined to go through with the trade; that Underwood offered to give to the plaintiff a check refunding the amount of the down payment, which the plaintiff refused; that, when Linder later sent some men to the lot in question to get some bricks therefrom, the plaintiff stopped the men from hauling the bricks away; that Linder then came to see him, asking why he had stopped the men, and denying that he had authorized Underwood to make the sale; that, upon being informed by the plaintiff that Underwood had sold the lot to him, Linder brought Underwood to the plaintiff's home, which adjoins the land in question, where, according to the testimony of the plaintiff, the following conversation took place in the presence of the plaintiff, Underwood, Linder, and one A. J. Fowler: "He [Linder] says, 'Is this the man here that you bought the lot from?' And I said, 'Yes.' And I was standing up on the porch and I put my hand up on Mr. Underwood's shoulder and I says, 'Didn't I buy this lot from you?' And Mr. Underwood said, 'Yes, you sure did.' So Mr. Raymond Linder said, 'Well, how come you selling this property without consulting me?' He said, 'Why, listen, Raymond, don't you know,' they commenced arguing between themselves, then 'Listen, Raymond, don't you know that you give me permission to sell Mr. Harris this lot?' He said, 'I don't remember about it.' Well, so Mr. Underwood went ahead and begged him to remember and commenced telling the times about it and

made him remember it. And finally Mr. Linder rubbed his face and head, something like that, and he said, 'Yeah, I believe I remember something about it now.'" A. J. Fowler testified for the plaintiff as to substantially the same conversation. The plaintiff further testified that, following this conversation, Linder again came to his home and "Mr. Linder agreed to buy the bricks from me. . . Well, the second time I talked to Mr. Linder was when he come back down there, and he asked me to let him have the brick. He says, 'You don't especially care anything about those brick out there, do you?' This is the second time. I says, 'No, I don't especially care anything about them.' He says, 'Well, I'm building some concrete steps.' Mr. Linder came back down there and asked me to let him have those brick. That's right. He told me he would pay me for them, he would keep up with them."

The defendant, Underwood, called for cross-examination by counsel for the plaintiff, testified substantially, in accordance with the allegations of his answer, to the effect that he owned no interest in the lot at the time of the alleged contract with the plaintiff, and that he was merely acting as agent for the plaintiff, and he undertook to explain the making of the two deeds, one dated before the date of the alleged contract with the plaintiff, but not filed for record until January thereafter, and the other executed after the date of the alleged contract with the plaintiff. It appears from the record that, since the former appearance of the case in this court, a condemnation proceeding has been instituted by the Georgia Power Company against the land here involved, in which the plaintiff and the defendants were named as the condemnees, that an award of $4000 has been entered in that case, and that sum has been paid into court by the power company. The plaintiff moved to consolidate that proceeding with the present action, and has excepted to the judgment of the trial court refusing such consolidation. The plaintiff has also filed an amendment to his petition, in which he seeks to recover of the defendants the down payment of $750 made by the plaintiff to Underwood, and damages of $1750, the difference between the alleged contract price of $2250 and the alleged market value of the lot of $4000. *Held:*

1. While Code § 20-401 (4) provides that any contract for the sale of lands, or any interest in or concerning them, to be binding upon the promisor, must be in writing, signed by the party to be charged therewith, or some person by him lawfully authorized, this section does not apply where there has been such part performance of the contract as would render it a fraud of the party refusing to comply, if the court did not compel a performance. Code, § 20-402 (3); *Baxley Hardware Co.* v. *Morris,* 165 *Ga.* 359 (2) (140 S. E. 869). While payment of a part of the purchase-money is not alone such part performance as will take the case out of the statute of frauds, partial payment of the purchase-money accompanied with possession will amount to such part performance as to take the contract out of the statute (*Wimberly* v. *Bryan,* 55 *Ga.* 198; *Corbin* v. *Durden,* 126 *Ga.* 429 (55 S. E. 30), and to authorize the specific performance of a parol contract. Code, § 37-802.

2. Where, as in this case, it appears that, by reason of the condemnation

of the land involved by a public utility company since the filing of the present proceeding, it is impossible for the defendants to specifically perform the alleged contract, the plaintiff is entitled to prosecute his action for damages. Code, § 37-807; *Lane* v. *Lodge,* 139 *Ga.* 93 (3-a) (76 S. E. 874); *Loewus* v. *Eskridge & Downing Inc.,* 175 *Ga.* 456 (165 S. E. 576).

3. Whether under the pleadings and the conflicting evidence in this case the defendant Underwood was acting as agent for the plaintiff, or for himself and as agent for the joint defendant in the sale of the land here involved, were questions of fact to be determined by the jury.

4. The act of one holding himself out as agent in consummating a sale for his principal may be ratified by the principal, even if the agent was unauthorized in the first place to make the sale, and such ratification may be implied from the acts or silence of the principal. Where a principal is informed by his agent of what he has done, unless the principal repudiates the act promptly or within a reasonable time, a ratification will be presumed. A ratification once made may not be revoked. Code, § 4-303; *Whitley* v. *James,* 121 *Ga.* 521 (4) (49 S. E. 600); *Brooke & Co.* v. *Cunningham Bros.,* 19 *Ga. App.* 21, 22 (5) (90 S. E. 1037); *Mendel* v. *Converse & Co.,* 30 *Ga. App.* 549, 556 (30) (118 S. E. 586).

(a) While there was no proof in this case of any written authority from the defendant Linder to the defendant Underwood to act as his agent in the sale of Linder's interest in the land involved to the plaintiff, whether Linder's conduct, on being informed of the sale contract, ratified it by admitting such authority in Underwood or by asquiescing in the plaintiff's right to prevent Linder's employees from removing brick from the property, and in agreeing to pay for the same if the plaintiff would permit their removal, were questions of fact for determination by a jury under the evidence of the plaintiff. *Perkins Co.* v. *Wilcox,* 132 *Ga.* 166 (3) (63 S. E. 831); *McKinnon & Eve* v. *Hope,* 118 *Ga.* 462 (1) (45 S. E. 413); *Northington* v. *Granade,* 118 *Ga.* 584 (3) (45 S. E. 447); *Mendel* v. *Converse & Co.,* 30 *Ga. App.* 549, 556 (31) (supra).

5. Where there is any evidence authorizing a jury to find for the plaintiff, although it may not be sufficient to require them to do so, it is error to grant a nonsuit. Code, § 110-310; *East & West R. Co. of Ala.* v. *Sims,* 80 *Ga.* 807 (6 S. E. 595); *Elrod* v. *McConnell,* 170 *Ga.* 892 (154 S. E. 449). Under the foregoing rules and the evidence in this case, it was error to grant a nonsuit as to the defendant Linder.

6. It was likewise error to direct a verdict in favor of the plaintiff and against the defendant Underwood for only $750, the part payment of the purchase-price of the land paid by the plaintiff to the defendant Underwood. Whether the defendant Underwood's explanation of the two deeds made by him to the defendant Linder to the land in question—one deed prior to the alleged contract of sale but not filed for record until afterwards, and one made after the alleged contract for sale—and whether or not Underwood actually owned an interest in the land at the time of the alleged contract of sale, and was therefore liable to the plaintiff in damages for the difference in the

contract price and the market value of the land, were questions to be determined by the jury.

7. The trial court did not err in refusing to consolidate the condemnation proceedings by the public utility company against the plaintiff and the defendants with the present proceeding, since the two are not between the same parties, arising under the same contract, involving the same cause, and upon which the same verdict may be rendered. Code, § 3-112.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

No. 17482. ARGUED JUNE 12, 1951—DECIDED JULY 10, 1951—REHEARING DENIED JULY 24, 1951.

*Robert T. Speer, S. T. Allen,* and *Clifford Hendrix,* for plaintiff.

*G. Eugene Ivey, T. Elton Drake,* and *John M. Williams,* for defendants.