## S96A1044. TURNIPSEED v. JAJE et al.
## S96X1047. HOUDE et al. v. TURNIPSEED.
## S96A1048. JAJE et al. v. TURNIPSEED.
(477 SE2d 101)

THOMPSON, Justice.

These appeals stem from a contract for the sale of real property

---

owned in common by six sellers. The trial court ruled that two of the sellers are not bound by the contract. It concluded, nevertheless, that the contract is complete and that the purchaser can seek monetary damages (but not specific performance) against the other sellers. We agree that two of the sellers are not bound by the contract. Nevertheless, we reverse because the contract is inchoate and incomplete.

Defendants Shaw, Houde, Walsh, Jaje, McFarland and Lenberg, each own an undivided interest in a Sea Island, Georgia house and lot. Shaw is a real estate broker; Houde and Walsh are Shaw's sisters. Plaintiff Turnipseed entered into negotiations with Shaw to purchase the property. Shaw drafted a letter discussing the terms of a proposed sale. Thereafter, Shaw sent Turnipseed a letter agreement which read, in part: "We [defendants] would be willing to sell this property based on the following terms and conditions. . . . If these terms and conditions are acceptable to you, please sign this letter acknowledging your agreement with the terms and conditions as outlined above." The letter agreement was signed by Shaw and Turnipseed. The closing was set for July 1, 1993.

Houde and Walsh live in Maryland, and Shaw telefaxed copies of the contract to them. Shaw planned to attend the closing and sign the deed on his own behalf, and on behalf of his sisters. Accordingly, Turnipseed's attorney prepared and sent powers of attorney to the sisters' attorneys in Maryland. In the meantime, Turnipseed deposited earnest money (in the amount of $10,000) in escrow with his attorney.

Shaw told his sisters that the closing would take place on July 1, and they told him that they were looking forward to it. Although Houde expressed some reluctance to sell the property, she told Turnipseed's closing attorney that she was going to do what Shaw wanted her to do. Prior to the scheduled closing, she told Turnipseed's closing attorney's secretary that she would close "since it had already been agreed to." Nevertheless, the powers of attorney were not returned in time for the July 1 closing.

Turnipseed, Shaw, Jaje and Lenberg signed an agreement to extend the closing to 4:00 p.m. on July 2, 1993. Jaje signed the extension agreement for McFarland, and it is undisputed that she had authority to do so. Shaw signed as "attorney in fact" for Houde and Walsh. On July 2, another extension was executed in the same form and in the same manner. It extended the closing until July 16. Both letters of extension expressly stated that "all other terms of the Agreement . . . are ratified and confirmed."

On July 8, the sisters' attorneys sent a letter to Shaw questioning a number of items in the letter agreement. However, they did not question Shaw's authority to contract on behalf of his sisters.

On July 16, Shaw received another offer for the property. It

exceeded Turnipseed's offer by $220,000. A few days later, the sisters took the position that Shaw was not authorized to contract on their behalf. Until that point, neither sister had registered any objection to the contract.

Turnipseed brought suit, seeking specific performance of the contract. With the exception of Shaw, the defendants moved for summary judgment. The trial court granted summary judgment to Houde and Walsh, concluding that Shaw did not have authority to contract on their behalf. It denied summary judgment to the remaining defendants, concluding that the contract was complete and that, therefore, the remaining defendants were bound to sell their respective interests in the property to Turnipseed. It ruled, however, that Turnipseed was not entitled to specific performance of the contract because summary judgment had been granted to Houde and Walsh and the sale of their interests could not be compelled. Thus, the trial court concluded that Turnipseed can only pursue a remedy at law (i.e., for monetary damages) against the remaining defendants.

Turnipseed appealed in Case No. S96A1044; Houde and Walsh cross-appealed in Case No. S96X1047; Jaje, McFarland and Lenberg appealed in Case No. S96A1048.

1. OCGA § 10-6-2 provides, in pertinent part: "Where the exercise or performance of an agency is by written instrument, the agency shall also be created by written instrument . . ." Under this Code section, which is known as the "equal dignity rule," the authority of an agent to execute an instrument required by the statute of frauds to be in writing must also be in writing. Thus, the authority of an agent to execute a contract for the sale of real estate must be evidenced by a writing. *Deal v. Dickson*, 232 Ga. 885 (209 SE2d 214) (1974); *Terry v. Kean*, 180 Ga. 627 (180 SE 135) (1935). If the rule were otherwise, the purpose of the statute of frauds would be frustrated. *Jones v. Sheppard*, 231 Ga. 223, 225 (200 SE2d 877) (1973), quoting *Byrd v. Piha*, 165 Ga. 397, 402 (141 SE 48) (1927). It follows that the statute of frauds and the equal dignity rule bar any contract claim against Houde and Walsh.

2. Turnipseed contends that Houde and Walsh cannot raise the statute of frauds as a defense and deny that Shaw was their agent in light of the doctrines of apparent authority, estoppel and ratification. We find, however, that these doctrines are inapplicable to the facts of this case.

(a) *Apparent authority and estoppel*. Turnipseed was charged with notice that Shaw's authority to execute the contract was required by law to be in writing, and he was therefore bound to ascertain whether Shaw had written authority to enter into the contract on behalf of Houde and Walsh. *20/20 Vision Center v. Hudgens*, 256 Ga. 129, 134 (345 SE2d 330) (1986); OCGA § 10-6-50. Turnipseed

asked Shaw about the extent of his authority and Shaw informed him that he was authorized to act on behalf of Houde and Walsh. However, Turnipseed was negligent in that he failed to determine whether Shaw had the requisite written authority to bind Houde and Walsh. Id.; *Nalley v. Whitaker*, 102 Ga. App. 230 (4) (115 SE2d 790) (1960). Turnipseed's negligence should not be excused because of Shaw's alleged apparent authority to act on behalf of Houde and Walsh.

The roots of apparent authority can be found in the principle of estoppel:

> This doctrine of apparent authority "is based upon the principle that where one of two innocent parties must suffer from the wrongful act of another, the loss should fall upon the one who, by his conduct, created the circumstances which enabled the third party to perpetrate the wrong and cause the loss." *Commercial Credit Corp. v. Noles*, 85 Ga. App. 392, 396 (69 SE2d 309) [1952]; Code § 37-113 [OCGA § 23-1-14]. Thus, an estoppel is worked against the principal to deny that there was authority [cit.] and the principal "will not be permitted to prove that the agent's authority was, in fact, less extensive than that with which he apparently was clothed." *Commercial Credit Corp. v. Noles*, 85 Ga. App. 392, 396, supra. In order for this estoppel to occur it must appear that the third party dealt with the agent in reliance upon the authority which the principal has apparently conferred upon him [cit.] and it must appear that "a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent had authority to perform a particular act and deals with the agent upon that assumption." *Commercial Credit Corp. v. Noles*, 85 Ga. App. 392, 396, supra.

*Interstate Fin. Corp. v. Appel*, 134 Ga. App. 407, 411 (215 SE2d 19) (1975). See also *20/20 Vision Center v. Hudgens*, 256 Ga. 129, 134 (4), supra.

Houde and Walsh did nothing to lead a person of ordinary prudence to believe that Shaw had authority to enter into the contract on their behalf. They did not hold Shaw out as their agent; they did not by their course of dealing indicate that he was their agent. Although Shaw indicated that he had authority to contract on behalf of Houde and Walsh, there were no manifestations of authority by Houde and Walsh to Turnipseed. See *Trust Co. of Ga. v. Nationwide Moving &c. Co.*, 235 Ga. 229, 232 (219 SE2d 162) (1975) (apparent authority requires manifestations of authority by principal). See also

*Shivers v. Barton & Ludwig, Inc.*, 164 Ga. App. 490 (296 SE2d 749) (1982). In short, Houde and Walsh did nothing to induce Turnipseed to enter into the contract with Shaw. Apparent authority is not in issue. *Trust Co. of Ga. v. Nationwide Moving &c. Co.*, supra.

(b) *Ratification.* Turnipseed contends that, even if Houde and Walsh are not estopped to deny the apparent authority of Shaw to enter into the contract, they ratified Shaw's acts by their post-contract conduct.[1] We disagree. The ratification of a real estate contract which was executed by an unauthorized agent must be in writing. *McCalla v. American Freehold &c. Co.*, 90 Ga. 113 (15 SE 687) (1892). An oral ratification will not suffice. *Hubert Realty Co. v. Bland*, 79 Ga. App. 321, 323 (53 SE2d 691) (1949). Houde and Walsh did not execute a written document ratifying the acts of Shaw. It cannot be said, therefore, that they ratified the contract.[2]

Citing *Harris v. Underwood*, 208 Ga. 247 (66 SE2d 332) (1951), Turnipseed points out that a contract for the sale of land can be ratified by a purported principal's silence, i.e., by a purported principal's failure to promptly repudiate the acts of his purported agent. Id. at 250 (4). Turnipseed is correct. Where partial performance of a real estate contract takes the case out of the statute of frauds, the contract can be ratified by a purported principal's silence. See id. at 249 (1). However, where, as here, there is no such partial performance, ratification must be in writing. *McCalla v. American Freehold &c. Co.*, supra.

3. Having decided that Houde and Walsh are not bound by the contract, we must determine whether the contract is complete or incomplete. We conclude that the contract is incomplete and that the trial court erred in reaching an opposite conclusion.

Whether a contract is complete or incomplete depends on the intent of the parties. *Abernathy v. Grant*, 232 Ga. 880 (209 SE2d 210) (1974). Pursuant to the contract, Turnipseed was to purchase the Sea Island house and lot from all of the owners for $920,000. That sum was to be paid to the owners as a group. Thus, the contract itself contemplates that all of the owners would sell their interests in the property. *Abernathy v. Grant*, supra at 882. Nothing in the contract

---

[1] "[T]he distinguishing feature of estoppel is the inducement to another to act to his prejudice, while ratification is the confirmation by one of an act performed by another without authority. [Cits.]" *Griggs v. Dodson*, 223 Ga. 164, 169 (154 SE2d 252) (1967). Thus, the principle of apparent authority and estoppel is applicable to Houde and Walsh's pre-contract conduct, while ratification is applicable to their post-contract conduct.

[2] To the extent it could be argued that the post-contract conduct of Houde and Walsh constitutes estoppel, the argument must fail because Turnipseed did not change his position to his detriment in reliance upon that conduct. See *Morgan v. Maddox*, 216 Ga. 816 (1) (d) (120 SE2d 183) (1961) (doctrine of estoppel is predicated upon a detrimental change in position in reliance upon conduct of party to be estopped).

indicates that Turnipseed intended to purchase the individual interests of the sellers, or that the sellers intended to sell their interests individually.

Turnipseed mistakenly relies on *Chastain v. Schomburg*, 258 Ga. 218 (367 SE2d 230) (1988), in support of his contention that the contract is complete. In that case, the buyer entered into a contract with the seller to purchase 25 acres of land. The seller owned a 60 percent undivided interest in the land; his children owned the remaining interest, but they were not parties to the contract. Because the contract was signed by the one person who was shown on its face to be a party, it was complete and enforceable against the seller. In this case, unlike *Chastain*, it is clear that the contract contemplates the sale of all of the property by all of the owners. Inasmuch as Houde and Walsh are not bound to sell their interests in the property, the contract is incomplete and unenforceable. Compare *Abernathy v. Grant*, supra at 882, with *Johnson v. Sackett*, 256 Ga. 552 (350 SE2d 419) (1986).

4. The trial court erred in failing to grant summary judgment to all of the defendants.

*Judgment affirmed in part and reversed in part in Case No. S96A1044; judgment reversed in Case No. S96A1048; appeal dismissed as moot in Case No. S96X1047. All the Justices concur.*

DECIDED OCTOBER 15, 1996 —
RECONSIDERATION DENIED NOVEMBER 22, 1996.

*Forbes & Bowman, Morton G. Forbes, John A. Foster,* for Turnipseed.

*Whelchel, Brown, Readdick & Bumgartner, J. Thomas Whelchel, Richard K. Strickland,* for Jaje et al.

*Austin E. Catts,* for Houde et al.