**FIFTH DIVISION**
**RICKMAN, C. J.,**
**MCFADDEN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 20, 2021**

# In the Court of Appeals of Georgia

A21A0796. U. S. BANK TRUST NATIONAL ASSOCIATION AS DELAWARE TRUSTEE et al. v. CHIEFTAIN ATLANTA, L. P.

PHIPPS, Senior Appellate Judge.

In this real property dispute, plaintiffs U. S. Bank Trust National Association, as Delaware Trustee, and U. S. Bank National Association, as co-trustee for Government Loan Securitization Trust 2011-FV1 (collectively, "U. S. Bank"), appeal from the denial of U. S. Bank's motion for reconsideration of the denial of its motion for summary judgment on its claim for a declaratory judgment.[1] U. S. Bank contends

---

[1] U. S. Bank appeals following our grant of its application for interlocutory review. See *U. S. Bank Trust National Association, as Delaware Trustee v. Chieftain Atlanta, L. P.*, No. A20I0162 (Feb. 10, 2020). Although an order denying a motion for reconsideration ordinarily is not directly appealable, *State v. Lynch*, 286 Ga. 98, 102 (2) (686 SE2d 244) (2009), it may be the subject of an interlocutory appeal

that the trial court erred when it concluded that disputed factual issues precluding summary judgment exist regarding whether U. S. Bank ratified a forged cancellation of a security deed and thereby extinguished its interest in the real property at issue here. For the reasons that follow, we agree and reverse.

Viewed in the light most favorable to the nonmoving party, see *City of St. Marys v. Reed*, 346 Ga. App. 508, 508 (816 SE2d 471) (2018), the record shows that non-party Jannifer Thomas bought the property at issue in this action (the "Property") in 2000. The following year, she obtained a mortgage loan in the amount of $98,907 (the "Loan") and executed a security deed as to the Property in favor of her lender (the "Security Deed"). Thomas's lender later transferred the Loan and Security Deed, which eventually were obtained by non-party Wells Fargo Bank, N. A., in 2009 and by U. S. Bank in April 2013. In September 2014, a cancellation of the Security Deed purportedly executed by Wells Fargo (the "Cancellation") was recorded in the county real estate records. Wells Fargo (which remained the servicer for the Loan) first learned of the Cancellation in late October 2014, during a title examination pursuant to a foreclosure referral. Consequently, in May 2015, U. S. Bank and Wells Fargo

_____

where, as here, a certificate of immediate review is obtained, *Mayor & Aldermen of the City of Savannah v. Norman J. Bass Constr. Co.*, 264 Ga. 16, 17 (1) (441 SE2d 63) (1994).

filed an "Affidavit Affecting Title to Land" executed by a Wells Fargo vice president, who attested that the September 2014 Cancellation is a forgery and that an outstanding balance on the Loan still exists (the "Affidavit"). The Affidavit was recorded in the county real estate records on May 22, 2015.

Meanwhile, in 2013, Thomas transferred the Property, which eventually was obtained by defendant Chieftain Atlanta, L. P., via a limited warranty deed on July 22, 2015, two months after the Affidavit was recorded. Chieftain thereafter used the Property (along with other properties) as security for a pre-existing $26 million loan. Notably, in the weeks before Chieftain acquired the Property, it obtained a title report highlighting the Affidavit recorded in the county real estate records.

This action began in January 2018, when U. S. Bank filed a complaint against several defendants, including Chieftain. As relevant to this appeal, U. S. Bank sought a judgment declaring that the September 2014 Cancellation is ineffectual and that the Security Deed assigned to U. S. Bank remains in full force as the first priority security interest and/or lien on the Property.[2] Following discovery, U. S. Bank moved for summary judgment on its request for a declaratory judgment, arguing that the

---

[2] U. S. Bank also asserted a claim for quiet title, which appears to remain pending before the trial court.

3

undisputed facts show that the Loan remains outstanding, the Cancellation is a nullity because it is a forgery, and Chieftain is not a bona fide purchaser for value because it had notice of the May 2015 Affidavit when it acquired the Property. In support of its motion, U. S. Bank submitted the affidavits of the individuals who purportedly signed and notarized the Cancellation, each of whom attested that it is a forgery, as well as the affidavit of a loan officer who attested that a balance of $100,233.45 remained outstanding on the Loan.

In its opposition to summary judgment, Chieftain contended that disputed factual issues remain as to whether U. S. Bank's delay in filing the May 2015 Affidavit and initiating this action effectively ratified the Cancellation.[3] The trial court agreed with Chieftain and denied summary judgment on that basis. U. S. Bank filed a motion for reconsideration, which the trial court also denied, and this interlocutory appeal followed.

We review de novo a grant or denial of summary judgment, viewing the evidence and all reasonable conclusions and inferences drawn from it in the light most favorable to the nonmovant. *City of St. Marys*, 346 Ga. App. at 508-509.

---

[3] The current record contains no indication that any other defendants opposed U. S. Bank's motion for summary judgment.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Id. at 508; see OCGA § 9-11-56 (c). "[T]he burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case." *Ellison v. Burger King Corp.*, 294 Ga. App. 814, 819 (3) (a) (670 SE2d 469) (2008) (citation and punctuation omitted); see OCGA § 9-11-56 (c). If the movant meets this burden, the nonmovant "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." *Ellison*, 294 Ga. App. at 819 (3) (a) (citation and punctuation omitted); see OCGA § 9-11-56 (e).

1. We first address U. S. Bank's challenge to the trial court's ruling that questions of fact remain as to whether U. S. Bank ratified the Cancellation. For the reasons that follow, we hold that no ratification occurred on the facts of this case.

"The relationship of principal and agent may be established if one person, expressly or by implication, ratifies the acts of another on his behalf." *Rains v. Dolphin Mtg. Corp.*, 241 Ga. App. 611, 614 (4) (525 SE2d 370) (1999). "Ratification, the confirmation by one of an act performed by another without authority, is an affirmative defense, and the burden of proving it is on the party asserting it." *Hendrix*

*v. First Bank of Savannah*, 195 Ga. App. 510, 511 (1) (394 SE2d 134) (1990); accord

*Griggs v. Dodson*, 223 Ga. 164, 171 (2) (154 SE2d 252) (1967) (burden is on party

seeking ratification). "The ratification must be made by the principal with knowledge

of the material facts and 'may be express or implied from the acts or silence of the

principal.'" *Hendrix*, 195 Ga. App. at 511 (1) (citation omitted) (quoting OCGA § 10-

6-52). Thus, "[i]f the principal, with full knowledge of all the material facts, *accepts*

*and retains the benefits of the unauthorized act*, he thereby ratifies the act." Id.

(emphasis supplied; citation and punctuation omitted); accord *Rains*, 241 Ga. App.

at 614-615 (4); *Medley v. Boomershine Pontiac-GMC Truck, Inc.*, 214 Ga. App. 795,

798 (4) (449 SE2d 128) (1994); *Hyer v. C & S Nat. Bank*, 188 Ga. App. 452, 453 (1)

(373 SE2d 391) (1988).

Ratification issues often arise in contract disputes, in which a court is asked to

determine whether a party to the contract ratified the agreement at issue. See, e.g.,

*Griggs*, 223 Ga. at 169-171 (2); *Harris v. Underwood*, 208 Ga. 247, 250 (4) (66 SE2d

332) (1951); *Div. Six Sports, Inc. v. Hire Dynamics, LLC*, 348 Ga. App. 347, 350-352

(822 SE2d 841) (2019); *McKean v. GGNSC Atlanta, LLC*, 329 Ga. App. 507, 511-

513 (1) (b) (765 SE2d 681) (2014); *American Computer Technology, Inc. v.*

*Hardwick*, 274 Ga. App. 62, 65-66 (2) (616 SE2d 838) (2005); see also *Mori Lee,*

6

*LLC v. Just Scott Designs, Inc.*, 325 Ga. App. 625, 630-631 (3) (754 SE2d 616) (2014) (physical precedent only). A key question in these cases typically is whether the party knowingly accepted benefits under the agreement through silence and/or performance. See *McKean*, 329 Ga. App. at 513 (1) (b); *American Computer Technology, Inc.*, 274 Ga. App. at 65-66 (2); *Medley*, 214 Ga. App. at 798 (4).

The concept that ratification typically entails the acceptance of benefits extends to cases in which a party alleges that another forged his signature on a contract without his knowledge. See *Ferguson v. Golf Course Consultants, Inc.*, 243 Ga. 112, 112-113 (252 SE2d 907) (1979); *Southtrust Bank of Ga. v. Parker*, 226 Ga. App. 292, 294-295 (1) (486 SE2d 402) (1997); see also generally *Brock v. Yale Mtg. Corp.*, 287 Ga. 849, 854-855 (3) (700 SE2d 583) (2010) (observing that "a forged signature is nonetheless binding if" the person whose name was signed, "with full knowledge of all the material facts, accepts the benefits of an unauthorized act, or retains such benefits after discovering the material facts") (citation omitted); *Summit Automotive Group, LLC v. Clark*, 298 Ga. App. 875, 883-884 (4) (681 SE2d 681) (2009) (for ratification of allegedly fraudulent acts to occur, "the principal must accept and retain the benefits of the unauthorized act") (citation and punctuation omitted). For example, a party whose signature is forged on a land sale instrument may be deemed

to have ratified the forgery if he later accepts the financial benefits of the sale with knowledge of the forgery. See *Ferguson*, 243 Ga. at 112-113. And a party whose signature is forged on a promissory note may be deemed to have ratified the forgery if she accepts the benefits of the loan with knowledge of the forgery. See *Southtrust Bank of Ga.*, 226 Ga. App. at 294-295 (1). A party also may ratify the allegedly unauthorized sale of his land by another purporting to act as his agent, where the party later acknowledges the purported agent's authority to have made the sale or affirmatively acquiesces in the buyer's right to possession of the land. See *Harris*, 208 Ga. at 248-249, 250 (4).

Here, Chieftain has pointed to no record evidence suggesting that U. S. Bank accepted any benefits under the Cancellation, which, given the outstanding Loan balance, could operate only to U. S. Bank's detriment. And there is no allegation that U. S. Bank acknowledged the authority of the persons who filed the Cancellation or otherwise affirmatively acquiesced in its validity.

Chieftain contends, however, that U. S. Bank's delay in repudiating the Cancellation – standing alone – creates a jury question as to whether the length of the delay constitutes a ratification. See, e.g., *Hendrix*, 195 Ga. App. at 512 (1) (whether an unreasonable period of time passed before one objected to an act sought to be

8

ratified "usually an issue for the jury"); accord *Whitley v. James*, 121 Ga. 521, 523 (3) (49 SE 600) (1904); *Klingbeil v. Renbaum*, 146 Ga. App. 591, 593 (3) (246 SE2d 698) (1978). This claim is premised on the Supreme Court's observations in *Harris*, repeated in other Georgia appellate decisions, that "ratification may be implied from the acts *or silence* of the principal" and that ratification will be "presumed" if the principal, upon learning of what the agent has done, fails to repudiate the act "promptly or within a reasonable time."[4] See 208 Ga. at 250 (4) (emphasis supplied). These observations, however, necessarily must be viewed in the context of the facts at issue in each case. See *Cline Drive Land Trust v. Wells Fargo Bank, N. A.*, 339 Ga. App. 342, 345 (793 SE2d 550) (2016) ("A decision's holding is limited to the factual context of the case being decided and the issues that context necessarily raises. Language that sounds like a holding – but actually exceeds the scope of the case's factual context – is not a holding no matter how much it sounds like one.") (citation and punctuation omitted); see also *Corrugated Replacements, Inc. v. Johnson*, 340 Ga. App. 364, 370 (3) (797 SE2d 238) (2017) ("[T]he full text of judicial decisions

_____

[4] The first part of this concept – that a ratification may be implied from the acts or silence of the principal – is codified in OCGA § 10-6-52. Of course, the proposition that a ratification "may" be implied from silence sheds no light on whether silence in fact may amount to ratification under the facts of any given case.

is not law. Only the holdings of judicial decisions are law.") (citation and punctuation omitted), disapproved in part on other grounds by *Reid v. Morris*, 309 Ga. 230, 238 (845 SE2d 590) (2020). And we have not found any such case involving facts similar to those present here, where the alleged principal (here, U. S. Bank) obtained no benefits from the act sought to be ratified (here, the purported cancellation of the Security Deed) and engaged in no affirmative conduct that properly may be viewed as knowing acquiescence in that act, but rather took positive steps to repudiate the act before the party seeking ratification (here, Chieftain) had the opportunity to rely on it.[5] Compare *McKean*, 329 Ga. App. at 511-513 (1) (b) (concluding that the defendants did not meet their burden of showing ratification of an arbitration agreement where there was no evidence that the purported principal knew of the agreement or that she or her purported agent accepted any benefits under it), with *Mori Lee, LLC*, 325 Ga. App. at 630-631 (3) (holding that disputed factual issues remained as to whether a party ratified a settlement agreement when, inter alia, it initially accepted payment under the agreement), *Dobbs v. Titan Properties, Inc.*, 178 Ga. App. 389, 390-391 (1) (343 SE2d 419) (1986) (concluding that a corporation

---

[5] Notably, we also have found no cases in which, as here, the identity of the actor whose act is sought to be ratified is unknown.

10

ratified a lease by accepting rent and allowing occupation), and *Powers v. Cordele*, 143 Ga. App. 363, 364-365 (1) (238 SE2d 721) (1977) (holding that an appellant ratified his co-owner's application to have property annexed by a city where, after the annexation, the appellant accepted the benefits of annexation by paying lower rates for city services); see also generally *Griggs*, 223 Ga. at 169-171 (2) (concluding that the trial court erred in directing a verdict in favor of the party seeking ratification because there was no evidence that the alleged principal had a reasonable time to repudiate the transfer of land alleged to have been ratified after he learned of it and before he died); *Harris*, 208 Ga. at 250 (4) (holding that disputed factual questions remained as to whether a party ratified the sale of land by expressly admitting the authority of another to act as his agent in that regard and affirmatively acquiescing in the buyer's right to possession); *Klingbeil*, 146 Ga. App. at 593 (3) (concluding that issues of disputed fact remained as to whether a father ratified his son's act of signing the father's name to a surety agreement where, inter alia, the father made several payments under a related joint venture agreement before seeking to repudiate the surety agreement).

Chieftain's reliance on OCGA § 44-2-20, *Kemp v. Neal*, 288 Ga. 324, 327 (2) (704 SE2d 175) (2010), and *Maxco, Inc. v. Volpe*, 247 Ga. 212, 214 (1) (274 SE2d

11

561) (1981) – for the proposition that the Affidavit, standing alone, is neither a conveyance nor a legal proceeding by which title to realty may be attacked or a defect in the title cured – is misplaced, as that proposition has no bearing on the issue presented here. What matters here – for purposes of our review of the trial court's ruling on ratification – is that U. S. Bank acted without equivocation to repudiate the Cancellation by filing the Affidavit before Chieftain had an opportunity to act in reliance on the Cancellation, thereby putting Chieftain on notice of the facts in the Affidavit; whether U. S. Bank arguably could have done so (or done more) earlier is irrelevant on the facts of this case.[6] See OCGA § 44-2-20 (a) (9) ("Recorded affidavits shall be notice of the facts therein recited, whether taken at the time of a conveyance of land or not . . . [w]here such affidavits state any . . . fact or circumstance affecting title to land or any right, title, interest in, or lien or

---

[6] Notably, Chieftain cites no legal authority in support of its related passing, conclusory assertion that U. S. Bank "was obligated to take some action beyond merely recording an affidavit on the deed records." (Emphasis omitted.) Regardless, U. S. Bank did so by filing this action. That it did not do so earlier is immaterial for purposes of Chieftain's ratification claim, as the Affidavit was sufficient to refute the validity of the Cancellation, and its recording in the county real estate records was sufficient to put Chieftain (who had not yet acquired an interest in the Property) on notice of U. S. Bank's position in that regard. See OCGA § 44-2-20 (a) (9); *Maxco, Inc.*, 247 Ga. at 214 (1); *In Re Henderson*, 284 BR 515, 516, 519 (Bankr. N.D. Ga.) (2002).

12

encumbrance upon land."); *Maxco, Inc.*, 247 Ga. at 214 (1) ("The recording of the affidavit does three things. It puts the world on notice of the facts contained therein, it preserves the evidence and it provides a foundation for its admissibility provided the facts are material."); *In Re Henderson*, 284 BR 515, 516, 519 (Bankr. N.D. Ga.) (2002) (holding that a recorded affidavit explaining that a prior release of a security deed was executed in error, that the related indebtedness remained unsatisfied, and that the security deed was still in full force, "made it clear to all interested parties that the [s]ecurity [d]eed was unsatisfied" and served as actual notice to the bankruptcy trustee of the lender's continuing security interest in the debtor's real property). Finally, given Chieftain's knowledge of the Affidavit before it acquired the Property, accepting its position on ratification here would improperly result in a potential windfall in its favor and work a forfeiture of U. S. Bank's interest in the Property. Cf. *Hyer*, 188 Ga. App. at 453-454 (1) (concluding that, by entering into a divorce settlement agreement under which both parties retained all property then in their possession, the husband ratified his wife's prior allegedly unauthorized withdrawal of funds from his bank account, because "[t]o hold otherwise would constitute an unjust enrichment to [the husband] since he received all that he had on deposit with [the bank] by virtue of the property settlement he effected with his former wife").

13

In sum, U. S. Bank acted to repudiate the Cancellation before Chieftain acquired the Property, Chieftain knew of the repudiation when it acquired the Property, and there is no evidence that U. S. Bank received any benefit by failing to repudiate the Cancellation earlier than it did. Moreover, the parties have not cited, and research has not revealed, any Georgia appellate decisions applying ratification principles to the peculiar factual scenario presented here, and doing so in this case would result in a potential windfall in Chieftain's favor and a forfeiture of U. S. Bank's interest in the Property. For these reasons, we conclude that the trial court erred when it ruled that disputed factual issues regarding U. S. Bank's purported ratification of the Cancellation preclude summary judgment in its favor.

2. We now turn to the merits of U. S. Bank's request for summary judgment on its claim for a declaratory judgment to the effect that the Cancellation is ineffective as a forgery and that U. S. Bank holds a first priority security interest in the Property under the Security Deed. We conclude that no disputed factual issues remain in this regard and that U. S. Bank therefore is entitled to summary judgment on this claim.

"The filing and recordation of an instrument provides constructive notice to subsequent purchasers of the existence of a prior interest in the property." *Deljoo v. SunTrust Mtg., Inc.*, 284 Ga. 438, 439 (668 SE2d 245) (2008) (citation and

14

punctuation omitted). Thus, "a purchaser of land in this state is charged with notice of every fact shown by the [real estate] records, and is presumed to know every other fact which an examination suggested by the records would have disclosed." Id. (citation and punctuation omitted); see OCGA § 44-2-2 (b) (providing that notice to third parties takes effect when an instrument is filed for record in the clerk's office). And as discussed above, a recorded affidavit stating any "fact or circumstance affecting title to land or any right, title, interest in, or lien or encumbrance upon land" serves as notice "of the facts therein recited." OCGA § 44-2-20 (a) (9); accord *Maxco, Inc.*, 247 Ga. at 214 (1); *In Re Henderson*, 284 BR at 516, 519.

> Generally, the cancellation of a deed to secure debt results in title to the property being reconveyed to the grantor. However, as a matter of law, title does not pass back to the grantor in the absence of full payment of the debt. Accordingly, when, as here, a cancellation of a deed to secure debt is erroneously recorded, the grantee's security interest is *not* reconveyed.

*Patel v. J. P. Morgan Chase Bank, N. A.*, 327 Ga. App. 321, 323 (1) (757 SE2d 460) (2014) (footnotes omitted); accord OCGA § 44-14-60 (the conveyance of real property via a security deed "shall pass the title of the property to the grantee until the debt or debts which the conveyance was made to secure shall be fully paid"); see also

15

*Luther v. Clay*, 100 Ga. 236, 238, 244-245 (4) (28 SE 46) (1897) (a forged, recorded mortgage cancellation does not deprive the mortgagee of his property interest in the mortgage).

In its opposition to U. S. Bank's motion for summary judgment, Chieftain did not (a) identify any record evidence refuting U. S. Bank's evidence that the Cancellation is a forgery, that the debt secured by the Security Deed remains unpaid, and that, in the weeks before Chieftain acquired the Property, it obtained a title report highlighting the Affidavit recorded in the county real estate records or (b) otherwise dispute U. S. Bank's claims to that effect. Consequently, the evidence is undisputed that: (i) the Cancellation is a forgery; (ii) under the Security Deed, U. S. Bank therefore retains an interest in the Property; and (iii) Chieftain acquired its interest in the Property after – and with knowledge of – U. S. Bank's interest (as a result of which any potential prejudice to Chieftain is a matter of its own creation). As a result, U. S. Bank is entitled to summary judgment on its claim for a declaratory judgment.

For each of the above reasons, the trial court's order denying U. S. Bank's motion for summary judgment on its claim for a declaratory judgment is reversed, and

16

this case is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment reversed and case remanded. McFadden, P. J., concurs; and Rickman, C. J., concurs fully as to Division Two and concurs in judgment only as to Division One.*