A97A1208. MORRISON v. TRUST COMPANY BANK.
(493 SE2d 566)

JOHNSON, Judge.

Michael Morrison filed a complaint for specific performance, alleging Trust Company Bank (hereinafter "the bank") breached a contract to sell real estate. The parties filed cross-motions for summary judgment. The court granted the bank's motion and denied Morrison's motion for summary judgment. Morrison appeals, and we affirm.

Summary judgment is appropriate when the court, viewing all

the evidence and drawing reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). "A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. [Cit.]" Id.

Viewed in that light, the record shows the following: Morrison and the bank, through their brokers, entered into negotiations for the sale of commercial real estate owned by the bank. Morrison's broker faxed a proposed contract to the bank's broker. The bank's broker and vice-president made several changes to the proposed contract, striking a provision that permitted the inspection of the bank's books and records, and sent the changed proposal back to Morrison's broker. A day or two later, Morrison's broker sent a new draft which failed to include all the proposed revisions by the bank. The new draft still contained the inspection provision deleted by the bank. The bank's vice-president once again deleted the inspection provision, made a few other changes, and signed several copies of the document. Meanwhile, Morrison signed counterparts which did not contain these deletions.

It is undisputed that the two parties failed to agree in writing to a single set of terms. The contract proposed by Morrison and the contract proposed by Trust Company Bank contradicted one another in two ways: (1) Morrison's proposed contract contained an inspection provision that would allow Morrison to inspect the bank's books and records regarding the property and (2) Morrison's proposed contract provided for closing at a place designated by Morrison as opposed to the bank. Both these proposals contained a merger clause, stating each document contained the entire agreement and no effect would be given to any prior oral agreements or understandings.

As stated above, the bank twice refused to accept the inspection provision, and Morrison twice failed to delete the provision. As a matter of policy, the bank did not accept inspection provisions of this type. Upon discovering that Morrison intended to use the property to operate an adult bookstore, the bank terminated negotiations and notified Morrison it was withdrawing its offer to sell the property.

1. Morrison first alleges that his failure to delete the inspection clause and failure to modify a clause relating to the place of closing were merely "scrivener's errors" and were never intended to actually

modify the contract. According to Morrison, he had no interest in the bank's records and such a mistake does not constitute a counteroffer because he did not have the specific intent to make a counteroffer. This argument lacks merit.

Georgia law is clear: "[A]cceptance of an offer must be unconditional, unequivocal, and without variance of any sort; otherwise, there can be no meeting of the minds and mutual assent necessary to contract formation. Accordingly, a subsequent communication by one party to the alleged contract that varies even one term of the original offer is a counteroffer. [Cit.]" *Lamb v. Decatur Fed. &c.*, 201 Ga. App. 583, 585 (1) (411 SE2d 527) (1991). Attempting to circumvent the law, Morrison argues that he did not intend to make a counteroffer. However, intent has never been an element of making a counteroffer. This is especially true when, as here, a party's nonconforming proposed contract contained a merger clause stating that all prior agreements and understandings would have no effect.

Contrary to Morrison's argument, this case does not involve a "scrivener's error." Morrison cites no authority and we have located no authority for the proposition that varying terms can constitute a scrivener's error. *McLoon v. McLoon*, 220 Ga. 18, 19 (1) (136 SE2d 740) (1964), the only case cited by Morrison in support of his argument, is inapplicable. In *McLoon*, the parties did not dispute entering into a binding contract, and the court was only asked to resolve an ambiguity arising from documents prepared after the creation of the contract. Id. at 18-19. By contrast, the case before us does not involve "mistake of the scrivener and . . . oversight of the parties," but presents the question of whether a contract existed in the first place. Id. at 19. Accordingly, Morrison's argument lacks merit.

2. Morrison further contends that the differing terms constitute an "immaterial variance" and should not prevent the contract formation. In support of this argument, Morrison relies on *Crystal Cubes &c. v. Kutz*, 201 Ga. App. 338 (1) (411 SE2d 53) (1991), cases from other jurisdictions, which are not binding on this Court, and the Uniform Commercial Code, which he admits is not applicable to real estate transactions.

OCGA § 13-3-2 states as follows: "The consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition." Morrison, contending that Georgia applies a materiality exception to the "mirror image" rule, concludes that the inspection provision was not material to the contract and that he, not the bank, should have been granted summary judgment.

We need not decide whether Georgia law contains a materiality exception to the "mirror image" rule because it is clear from the record that the provision for inspection of the bank's books and

records was a material provision that the bank did not want in the contract. This is not a case where an additional term or condition finds its way into a contract without prior discussion between the parties, leaving for debate whether either party would have cared about the additional term had they discussed it. On two separate occasions the bank removed the inspection provision from Morrison's proposed contract. Both times, Morrison failed to do so. Although Morrison contends he had no intention of inspecting the bank's books and records, this is not a minor variation such as a change in the date of delivery of documents in *Crystal Cubes*.

Morrison asserts that the discrepancies are immaterial because the bank would have proceeded with the sale, notwithstanding the discrepancies, but for his intention to run an adult bookstore. In support of this assertion, Morrison cites testimony of the bank's broker, where he speculated that Tedd Watts, the bank's representative in charge of negotiations, might have gone forward but for Morrison's intention to run an adult bookstore. However, Watts clarified that, but for Morrison's line of business, "[w]e would have *continued to negotiate* and hopefully sold the property to Mr. Morrison." (Emphasis supplied.) This testimony, as well as other undisputed evidence that the bank would not have agreed to the inspection provision under any circumstances, illustrates that the inspection provision was a material term which needed to be agreed upon by both parties before a valid, binding contract was formed.

3. Morrison asserts that even if we find the trial court did not err in refusing to grant his motion for summary judgment, we must reverse the trial court's grant of summary judgment to the bank because a question of material fact exists regarding whether the parties intended to form a contract. He argues that the bank's representatives made reference to the "contract" between the parties and used words indicating that the parties had an enforceable contract. However, words used by the bank's representatives are not evidence of whether an enforceable contract was formed, especially considering that the words could be interpreted in different ways and that all the representatives whose words were cited by Morrison unequivocally denied the existence of a binding contract between the parties.

Based on the foregoing, we find that the trial court did not err in granting the bank's motion for summary judgment and denying Morrison's motion for summary judgment.

*Judgment affirmed. Pope, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED NOVEMBER 4, 1997.

*Stanley E. Kreimer, Jr.*, for appellant.
*King & Spalding, Mark M. Maloney*, for appellee.