A98A1599. AUGUSTA SURGICAL CENTER, INC. et al.
v. WALTON & HEARD OFFICE VENTURE.
(508 SE2d 666)

Judge Harold R. Banke.

Walton & Heard Office Venture ("Walton-Heard"), a Georgia general partnership, owns an office building at 2050 Walton Way ("2050 building") which it alleged was subject to a certain real estate sales contract executed by R. Jeffrey Adkins, M.D. Although neither Augusta Surgical Center, Inc. ("Augusta Surgical") nor Surgicare of Augusta, Inc. ("Surgicare") appear by name on this contract, Walton-Heard contended that in executing it, Adkins acted individually and also as an agent for both entities.

Augusta Surgical is a Georgia corporation that owned a nearby office building in which Surgicare, an entity owned by Columbia/HCA, leased space. Under that lease, Surgicare was afforded an option to purchase Augusta Surgical's building for $1,850,000. At the time of the transaction at issue, Adkins was secretary/treasurer of

Augusta Surgical and was under contract with Surgicare as its medical director. After the closing failed to transpire, Walton-Heard sued Adkins, Augusta Surgical, and Surgicare for specific performance of the sales contract or for damages for breach of that contract. Adkins, Augusta Surgical, and Surgicare appeal the denial of their motions for summary judgment, collectively asserting 17 enumerations of error.

On May 5, 1995, Adkins, as "BUYER" executed a sales contract to purchase Walton-Heard's 2050 building for $1,650,000. Adkins provided a $5,000 personal check as earnest money. A. L. Adams signed on behalf of Walton-Heard and Joseph Hamilton, a broker and a partner in Walton-Heard, also signed. One week after executing the contract, Adkins entered a substance abuse treatment program lasting several months. As the closing date of June 17 approached, Hamilton was unable to locate Adkins. Instead, Hamilton met with Andrew King of Columbia/HCA, the owner of Surgicare, Beryl Barrett, the administrator of Surgicare, and Hugh Connolly, a partner in Walton-Heard, to discuss the sales contract.[1]

While the real estate transaction at issue was pending, Surgicare and Augusta Surgical attempted to finalize a tax-free exchange of buildings. According to Hamilton, the plan was for Surgicare to purchase and obtain title to the 2050 building owned by Walton-Heard and then exchange it for the building owned by Augusta Surgical. In the end, Augusta Surgical would hold title to the 2050 building.

On several occasions, Hamilton negotiated with representatives of Columbia/HCA including King, who was vice president of Surgicare, Karl B. Wagner, chief regional financial officer for Columbia/HCA, and Steven Baker, legal counsel for Surgicare. King acknowledged that he and Adkins discussed the tax-free exchange concept before Adkins entered treatment. While Adkins remained unavailable, Barrett, on behalf of Surgicare and Adams for Walton-Heard twice initialed changes to the sales contract extending the date of closing. Later, the financing contingency clause was deleted. King explained that his company (Surgicare) extended the closing date because "we were trying to make a transaction happen." Adkins never re-executed or initialed the modified contract.

Although Augusta Surgical's board of directors unanimously approved the tax-free exchange, its shareholders rejected it.[2] John D.

---

[1] Hamilton, A. L. Adams, and Hugh Connolly are the managing partners and comprised the managing committee of Walton-Heard.

[2] According to the Exchange Plan of Augusta Surgical Center, Inc., "C/HCA has agreed to purchase the two story office building . . . known as 2050 Walton Way from its present owners for $1,650,000 and exchange such property for that now owned by ASCI."

Harmon, M.D., a shareholder of Augusta Surgical who inspected the building prior to the shareholders meeting, testified that he told the shareholders that if they could get the building for a lower price, "we could still hold this thing together." The shareholders voted to search for other properties. Prior to the vote of the stockholders, $18,000 in legal fees were incurred for work on the proposed tax-free exchange. Augusta Surgical and Columbia/HCA (Surgicare) split these fees 50/50.

With no written document providing authorization for Adkins to purchase real estate on behalf of either Augusta Surgical or Surgicare, the parties contest who did what for whom. According to Hamilton, he and Adkins had been negotiating for several months and he understood that Adkins was operating on behalf of others. However, Adkins testified that he had entered the contract only for himself and hoped to put a group together to purchase the property or to obtain the financing for himself. Both Augusta Surgical and Surgicare denied giving Adkins authority to act on their behalf. Adkins as secretary/treasurer of Augusta Surgical had check writing authority on Augusta Surgical's checking account and reimbursed the $5,000 earnest money to himself. Only after Walton-Heard filed the underlying action did the directors of Augusta Surgical seek repayment of the $5,000, and Adkins refused to comply.

In a letter dated July 20, 1995, Wagner, the chief regional financial officer of Columbia/HCA, the owner of Surgicare, wrote the following to Hamilton: "As you know, Columbia/HCA is interested in acquiring the office building located at 2050 Walton Way. . . . We have delayed the anticipated closing date of the transaction which was initiated by the doctors since it is now expected that Columbia will purchase the property. We expect that we will close on the transaction by August 25, 1995." *Held*:

1. Citing the general contract principles of statute of frauds, "mirror image" rule, and the concept of "equal dignity," the appellants contend they are entitled to judgment as a matter of law.

As a general rule, where the exercise or performance of an agency is by written instrument, the agency must also be created by written instrument. OCGA § 10-6-2. Under the "equal dignity rule," the authority of an agent to execute an instrument required by the statute of frauds to be in writing must also be in writing. *Turnipseed v. Jaje*, 267 Ga. 320, 322 (1) (477 SE2d 101) (1996). "Thus, the authority of an agent to execute a contract for the sale of real estate must be evidenced by a writing. [Cits.]" Id. Otherwise, the purpose of the statute of frauds would be frustrated. *Jones v. Sheppard*, 231 Ga. 223, 225 (200 SE2d 877) (1973). Here, no written document exists which authorized Adkins to act on behalf of either Augusta Surgical or Surgicare.

The absence of this writing, however, does not resolve this case. "[W]hile a written instrument may have been executed by an agent not having any authority in writing to do so or not having been ratified by an act of comparable dignity, the principal may nevertheless be estopped by his acts from denying the authority of his agent. [Cits.]" *20/20 Vision Center v. Hudgens*, 256 Ga. 129, 134 (4) (345 SE2d 330) (1986). Thus, if by their conduct Augusta Surgical or Surgicare ratified Adkins' actions, then they would be estopped from denying Adkins' authority. Id.

2. Both Augusta Surgical and Surgicare contend that the general principles of agency/partnership demonstrate that they are entitled to judgment as a matter of law.

An agency relationship is created wherever one person expressly or by implication authorizes another to act for him or subsequently ratifies the acts of another in his behalf. OCGA § 10-6-1. "[A]pparent authority to do an act is created as to a third person when the statements or conduct of *the alleged principal* reasonably cause the third party to believe that the principal consents to have the act done on his behalf by the purported agent." (Emphasis in original.) *Brown v. Little*, 227 Ga. App. 484, 487 (2) (489 SE2d 596) (1997) (physical precedent only).

Walton-Heard offered evidence that Surgicare did not repudiate the contract but rather embraced it. On two occasions, Surgicare agreed in writing to extend the closing date. Surgicare agreed to delete the financing contingency, and it tried to satisfy the August closing date. By letter and action, Surgicare through King appears to have communicated to Walton-Heard that Surgicare fully intended to purchase the 2050 building for the tax-free exchange. In these circumstances, we find that a jury must resolve whether by these actions Surgicare ratified Adkins' execution of the contract and whether Surgicare's conduct would have led a person of ordinary prudence to believe that Adkins had acted on Surgicare's behalf. *Turnipseed*, 267 Ga. at 323 (2) (a). See *Commercial Credit Corp. v. Noles*, 85 Ga. App. 392, 396 (69 SE2d 309) (1952) (principal estopped to deny agency where principal appears to have conferred authority).

Further, even where a binding agreement is lacking, triable issues of fact may preclude summary judgment under the doctrine of promissory estoppel. *20/20 Vision Center*, 256 Ga. 135 (7). Here, Walton-Heard offered evidence that in reliance upon the pending closing, it ceased advertising and marketing its leased space and told certain businesses that it could not rent to them. Further, in reliance upon the impending closing, Walton-Heard failed to seek a renewal of a soon-to-expire bank mortgage. See *Morgan v. Maddox*, 216 Ga. 816, 819 (120 SE2d 183) (1961) (doctrine of estoppel is predicated upon a detrimental change in position in reliance upon the conduct of the

party to be estopped). Therefore, the trial court properly denied summary judgment to Surgicare.

However, we reach a different outcome with respect to Augusta Surgical. "The officers [of a corporation] appointed by the directors are clothed with only such powers and authority as are expressly conferred upon them by the charter or the by-laws, or as may be implied by usage and acquiescence. [Cit.]" *Henderson Lumber Co. v. Chatham Bank &c. Co.*, 33 Ga. App. 196, 197 (1) (125 SE 867) (1924). In this case, the agreement was not executed in Augusta Surgical's name. Adkins did not sign the contract as "secretary/treasurer of" or "on the behalf of." Nor did Walton-Heard offer evidence of conduct by Augusta Surgical that it clothed Adkins with apparent authority to bind it to this contract. *Bresnahan v. Lighthouse Mission*, 230 Ga. App. 389, 391 (1) (496 SE2d 351) (1998). While it is true that Adkins reimbursed the earnest money to himself through Augusta Surgical's account, no evidence shows that Walton-Heard knew about that reimbursement and relied upon it.[3] It is undisputed that no one representing Augusta Surgical agreed to extend the closing date, initialed the contract changes, or consented to any modifications in the sales contract. See *20/20 Vision Center*, 256 Ga. at 134 (5); OCGA § 10-6-50.

Moreover, it is undisputed that Augusta Surgical's sole property consisted of the office building and a vacant lot. Barring certain circumstances not applicable here, State law precludes a corporation from exchanging substantially all its property, unless and until such action receives both board of directors and shareholder approval. OCGA §§ 14-2-1202 (b); 14-2-1201. Due to shareholder opposition, Augusta Surgical could not proceed with the tax-free exchange plan. Id.

Notwithstanding Walton-Heard's contention to the contrary, Surgicare and Augusta Surgical were not both purchasing the 2050 building. Under the tax-free exchange plan, Surgicare, not Augusta Surgical, was to buy the 2050 building from Walton-Heard, and then trade it to Augusta Surgical for Augusta Surgical's building. Evidently, after the shareholders of Augusta Surgical rejected the tax-free exchange of buildings, both the real estate sale and the exchange unraveled. Under these facts, we cannot agree that Augusta Surgical was a party bound to the real estate contract at issue. Therefore, Augusta Surgical was entitled to summary judgment. See *East Piedmont 120 Assoc. v. Sheppard*, 209 Ga. App. 664, 666 (434 SE2d 101) (1993).

---

[3] In any event, King admitted that Surgicare had discussed the possibility of reimbursing Augusta Surgical for the $5,000 earnest money after the conclusion of this case.

3. Surgicare contends that the trial court failed to recognize that Walton-Heard's partnership never properly authorized any agent to execute the sales contract on its behalf. In light of the conflicting evidence in the record, we believe that a jury must determine whether Adams, Hamilton, and Connolly, the members of Walton-Heard's managing committee, exceeded their authority or violated the terms of the partnership agreement. See *Atlanta Biltmore Hotel Corp. v. Martell*, 118 Ga. App. 172, 175 (3) (162 SE2d 815) (1968).

4. Adkins contends that he was entitled to summary judgment. We disagree. Without question, the parties dispute whether Adkins acted for himself or as an agent. Material issues of disputed fact remain as to whether the changes to the sales contract constituted a counteroffer or contract modifications. See *Morrison v. Trust Co. Bank*, 229 Ga. App. 145, 147 (1) (493 SE2d 566) (1997). Having reviewed the disputed facts in a light most favorable to Walton-Heard, we cannot say that triable issues do not remain. Id. at 146.

5. The remaining issues are either without merit or are controlled by the above findings.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Beasley, J., concur. Smith, J., disqualified.*

DECIDED OCTOBER 20, 1998 —
RECONSIDERATIONS DENIED NOVEMBER 16, 1998.

*Jay M. Sawilowsky, Timothy S. Mirshak*, for appellants.
*Dye, Tucker, Everitt, Wheale & Long, John B. Long, Jon E. Ingram, Jr.*, for appellee.