## A01A1203. MULTI-STATE CONTRACTING CORPORATION v. MIDWEST INDEMNITY CORPORATION et al.
### (556 SE2d 524)

ANDREWS, Presiding Judge.

Multi-State Contracting Corporation sued Midwest Indemnity Corporation and National American Insurance Company, among other defendants, to recover monies which were held in escrow under the terms of a disbursement agreement between Multi-State and Contractors Risk Management Corporation (CRMC). These funds were improperly diverted by CRMC for investment and were lost. Multi-State claims that CRMC acted as an agent for Midwest Indemnity and National American, which, as principals, are responsible for the loss of the escrowed funds. The trial court granted Midwest Indemnity's and National American's motions for summary judgment, and Multi-State appeals. We affirm because Multi-State cannot establish a genuine issue of material fact. See *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (437 SE2d 832) (1993).

In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 596 (370 SE2d 843) (1988). Midwest Indemnity and National American, as defendants, may prevail "by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review of the record is de novo. *Walker v. Virtual Packaging*, 229 Ga. App. 124 (493 SE2d 551) (1997).

The record shows that Multi-State entered into a construction contract with the United States Air Force. The Air Force required that Multi-State procure a surety bond guaranteeing its performance under the contract and payment of subcontractors and materialmen. This surety bond was issued by National American. Midwest Indemnity acted as National American's underwriter for purposes of evaluating Multi-State and the construction project. As part of the underwriting guidelines for the issuance of the surety bond, Midwest Indemnity and National American required Multi-State to use a disbursing and escrow agent. To satisfy these guidelines, Multi-State entered into a disbursement agreement with CRMC. Under the terms of the disbursement agreement, CRMC received funds payable to Multi-State under its contract with the Air Force and disbursed funds to pay for project-related labor, services, and materials as directed by Multi-State. For the protection of National American, the disbursement agreement also established a surety reserve fund in which five percent of the proceeds from the construction contract

were deposited. It is a common business practice for a surety to require an insured contractor to use a disbursing agent on a construction project. After completing the construction contract, Multi-State asked CRMC to release $71,100 held in the surety reserve fund. CRMC agreed to release the funds, but the money had been lost in failed investments.

The basis for Multi-State's claim for the loss of the funds held in the surety reserve is that CRMC was acting as the agent for Midwest Indemnity and National American. Multi-State argues that the trial court erred in granting Midwest Indemnity's and National American's motions for summary judgment because issues of material fact remain with respect to their agency relationship with CRMC. We disagree. A principal is responsible for the actions of its agent acting on its behalf within the scope of the agency. See OCGA § 10-6-60. Within the scope of its duties under the disbursement agreement, CRMC was designated as a trustee, with legal title of the account funds lying with Multi-State. The surety, National American, is an express third-party beneficiary of the agreement, and the funds in the surety reserve are designated to be paid to the surety in the event of any loss or claim incurred under the surety bond. There is nothing, however, within the terms of the disbursement contract establishing a principal/agent relationship between CRMC, acting as trustee, and the third-party beneficiary, National American. "Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf *and subject to his control*, and consent by the other so to act." (Citation and punctuation omitted; emphasis supplied.) *First Nat. Bank &c. v. Alvin Worley & Sons, Inc.*, 221 Ga. App. 820-821 (2) (472 SE2d 568) (1996). To the extent that CRMC might be looked upon as an "agent," it could not be said to have acted exclusively on behalf of either the contractor or the surety, but was more akin to an escrow agent in a real estate transaction. See *Fickling & Walker Co. v. Giddens Constr. Co.*, 258 Ga. 891, 895-896 (1) (a) (376 SE2d 655) (1989).

Multi-State also claims that Midwest Indemnity and National American required it to employ CRMC as the disbursement agent. The record shows that, while the use of a disbursement agent was a condition to the issuance of the surety bond, neither Midwest Indemnity nor National American explicitly demanded CRMC be used as the disbursing agent. Furthermore, the disbursement agreement identifies CRMC as chosen by Multi-State. The president of CRMC does affirm, however, that the parties to the issuance of the surety bond understood that CRMC would be used as the disbursing agent in this transaction because the insurance agent that brought the transaction to Midwest Indemnity and National American was Financial Services Intermediaries, Inc., which shared common ownership with CRMC. Even if Midwest Indemnity and National Ameri-

can implicitly required Multi-State to use CRMC as the disbursing agent, this is insufficient to establish a principal/agent relationship when it appears, based on the terms of the disbursement agreement and the testimony of the president of CRMC, that (1) CRMC was an independent corporation that did not act under the control or direction of Midwest Indemnity or National American in performing its duties under the disbursement agreement, and (2) CRMC acted without the direction or knowledge of Midwest Indemnity or National American in diverting the funds in the surety reserve. There are no grounds, on this record, for holding either Midwest Indemnity or National American responsible for the failure of CRMC to perform its duties under the disbursement agreement, and the trial court properly granted summary judgment.

*Judgment affirmed. Eldridge and Miller, JJ., concur.*

DECIDED NOVEMBER 15, 2001.

*Seacrest, Karesh, Tate & Bicknese, Karsten Bicknese, Amy E. Loggins*, for appellant.

*Thompson & Slagle, Jefferson B. Slagle, Marchetti & Lomas, Richard A. Marchetti, Goldner, Sommers, Scrudder & Bass, Stephen L. Goldner*, for appellees.