## A03A1428. FOUNTAINHEAD DEVELOPMENT CORPORATION, INC. et al. v. DAILEY et al.

(588 SE2d 768)

RUFFIN, Presiding Judge.

Roger and Violet Dailey sued Fountainhead Development Corporation, Inc. ("Fountainhead"), Chateau Elan Realty, Inc. ("Chateau Elan Realty"), Premier Builders, Inc. ("Premier"), and Premier's president, Michael Massey, for negligent representation, breach of contract, negligent construction, fraudulent conversion, and breach of warranty relating to the construction of their new home. They also sought litigation expenses and punitive damages.

Premier and Massey filed for bankruptcy, imposing an automatic stay on the Daileys' claims against them.[1] A jury subsequently found Fountainhead and Chateau Elan Realty liable on the Daileys' claims for breach of contract, fraudulent conversion, and litigation expenses. It found against the Daileys on the remaining claims. Fountainhead and Chateau Elan Realty appeal, arguing that the trial court erred in failing to direct a verdict for them. We agree and reverse.

In reviewing a trial court's directed verdict ruling, we construe the evidence and all inferences in favor of the verdict.[2] A directed verdict is only proper when "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict."[3]

Viewed in this manner, the evidence shows that, in 1998, the Daileys began looking for a new residence. In August or September of that year, they visited several properties north of Atlanta, including homes in the Chateau Elan subdivision. They liked several vacant lots within Chateau Elan and decided to build a house there.

Several weeks later, the Daileys met with Andy Williams of Chateau Elan Realty, a real estate office located in Chateau Elan that sold property within the subdivision. Williams informed the Daileys that, once they selected a lot, they would negotiate a construction contract with the assigned builder. Williams explained at trial that Fountainhead, the subdivision developer, had entered into a marketing plan with two builders, Premier and Bell-Harrison Homes. Under that plan, Fountainhead assigned each available lot to one of the two builders, which would then contract directly with prospective homeowners for the house construction.

The Daileys selected a lot that had been assigned to Premier,

---

[1] Massey's alleged liability and debt in this action were discharged by the bankruptcy court on February 7, 2002.

[2] See *Paul v. Destito*, 250 Ga. App. 631 (550 SE2d 739) (2001).

[3] (Punctuation omitted.) Id.

and they met with the builder to negotiate the construction details. On January 19, 1999, the Daileys executed a new home construction agreement with Premier. According to its terms, the agreement was "made and entered into . . . [b]etween Premier Builders Inc., (Builder) . . . and Roger E. [and] Violet M. Dailey (Homeowner)." The contract established $442,605 as the price of construction and obligated the Daileys to pay Chateau Elan Realty a real estate commission of $23,295. The agreement also contained a merger clause, which stated, in part:

> This Agreement constitutes the sole and entire agreement between the parties. No representation, promise or inducement not included in this Agreement is relied upon or shall be binding upon any part[y]. [The] term Agreement as used herein, as well as the terms herein, hereof, hereunder and the like mean this Agreement in its entirety.

The Daileys obtained a construction loan in their name and provided Premier with draws to finance the construction. Between January 1999 and January 2000, they paid the builder over $385,000. By the beginning of 2000, however, progress on the house had stopped, and the Daileys learned that Premier had failed to pay several subcontractors. Although the house was not complete, Premier did not return to the job site after March 17, 2000. Shortly thereafter, Mr. Dailey informed Phillip Mulherin, a Fountainhead assistant vice president, about the situation. Mr. Dailey told Mulherin that Fountainhead and Chateau Elan Realty were responsible because they chose the builder. Mulherin denied any responsibility.

The Daileys eventually finished their home in May or June 2000 by hiring subcontractors themselves. After they moved into the house, they discovered that certain work completed by Premier needed to be redone. According to Roger Dailey, the cost to repair and finish the home exceeded the contract price by $141,993.52.

The Daileys sued Fountainhead and Chateau Elan Realty for damages arising from Premier's failure to complete their house in accordance with the new construction agreement. Their claims centered around an agency theory. According to the Daileys, Fountainhead and Chateau Elan Realty were liable, as principals, for the conduct of Premier and Massey, their agents.

The verdict form required jurors to determine whether such an agency relationship existed. It further instructed jurors to consider the Daileys' claims for breach of the construction contract, negligent construction, fraudulent conversion, litigation expenses, and punitive damages "if and only if [they found] for the [Daileys] on the issue of agency." The jury ultimately concluded that Massey and Premier

were agents of Fountainhead and Chateau Elan Realty. It held Fountainhead and Chateau Elan Realty liable for breach of the construction contract and fraudulent conversion, but found for the defendants on the remaining agency-based claims.[4]

On appeal, Fountainhead and Chateau Elan Realty argue that the undisputed evidence shows that they are not liable to the Daileys as principals. We agree.

The Daileys do not contend that an actual agency relationship existed in this case. Instead, they claim that an ostensible or apparent agency developed between Fountainhead and Chateau Elan Realty, as principals, and Premier and Massey, as agents. "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf."[5] Under the theory of apparent or ostensible agency, a claimant may subject an alleged principal to liability by establishing: "(1) that the alleged principal held out another as its agent; (2) that the plaintiff justifiably relied on the care or skill of the alleged agent based upon the alleged principal's representation; and (3) that this justifiable reliance led to the injury."[6]

The Daileys argue that the evidence presented a question of fact as to an ostensible agency relationship, precluding a directed verdict. For example, they cite to evidence that Fountainhead and Chateau Elan Realty referred to Premier as "our builder" and required them to hire Premier for the construction of their home. The undisputed evidence also shows, however, that the Daileys contracted *directly* with Premier through the new construction agreement.

Our Supreme Court addressed a similar situation in *Kingsberry Homes v. Findley*.[7] In that case, the claimant entered a home construction contract with a builder for the construction of a "Kingsberry home," a type of home either developed or manufactured by defendant Kingsberry. When the builder failed to perform under the written contract, the claimant sued Kingsberry for breach, asserting that Kingsberry was the builder's principal and thus liable. The trial court denied Kingsberry's motion for summary judgment, and the Supreme Court reversed.[8]

Apparently presuming that a principal-agent relationship existed, the Supreme Court found that, " '[w]here one, with knowl-

---

[4] The Daileys also asserted a fraudulent misrepresentation claim against Fountainhead and Chateau Elan Realty, but apparently did not base the claim on agency principles. The jury found in favor of the defendants on that claim.

[5] OCGA § 10-6-1.

[6] *Kissun v. Humana, Inc.*, 267 Ga. 419, 420 (479 SE2d 751) (1997).

[7] 242 Ga. 362 (249 SE2d 51) (1978).

[8] See id. at 366 (2).

edge of the agent's authority to bind his principal, deals with the agent directly and not with the principal, he cannot hold the principal liable.'"[9] The Court recognized that, although questions regarding the parties' intent to bind a principal are usually presented to the jury, "[t]he declaration of intention and agreement in writing on the part of the agent to bind himself personally may be so explicit as to admit of no denial by parol [evidence]."[10] Noting that the contract contained a merger clause, did not refer to Kingsberry as a principal, and was executed by the builder in its individual capacity, the Court determined that the contract bound the builder individually, rather than as Kingsberry's agent.[11] Thus, Kingsberry was not liable for the builder's breach.[12]

These same principles apply here. The Daileys' new home construction contract does not mention Fountainhead or Chateau Elan Realty. As shown by its clear terms, it is an agreement between the Daileys and Premier. The contract neither identifies Premier as an agent of Fountainhead or Chateau Elan Realty nor provides any evidence that the parties intended Premier to act as an agent for those companies. On the contrary, it is signed by Premier individually. And the contract has a merger clause, precluding any reliance on representations, promises, or inducements not included in the agreement.

Furthermore, to the extent the facts show an agency relationship here, the Daileys knew about those circumstances when they entered the contract with Premier. According to Mr. Dailey, Williams referred to Premier as "our builder" when they first met with him regarding vacant lots. They also understood that, once they selected their lot, Fountainhead's marketing plan required them to work with Premier. Nevertheless, they contracted directly with Premier, which signed the new construction agreement on its own behalf.

As in *Kingsberry*, the new construction agreement provides "an express declaration in writing of an intention on the part of both parties to bind [Premier] individually under the terms of the contract."[13] Parol evidence regarding the purported agency relationship cannot alter the explicit language of this contract.[14] Accordingly, Fountainhead and Chateau Elan cannot be held liable for Premier's breach of the agreement.[15]

Similarly, they are not liable on the Daileys' fraudulent conversion claim, which arises from Premier's alleged misuse of construc-

---

[9] Id. at 365.
[10] Id.
[11] See id. at 365-366.
[12] See id. at 366.
[13] Id. at 365-366.
[14] See id.
[15] See id.

tion payments made under the contract. "A principal is responsible for the actions of its agent acting on its behalf within the scope of the agency."[16] As discussed above, Premier did not sign the new home construction contract as an agent of any party — it acted individually. Fountainhead and Chateau Elan Realty, therefore, are not responsible for any misdeeds committed by Premier in performing the contract.[17]

On appeal, the Daileys argue that Fountainhead and Chateau Elan Realty *required* them to work with Premier and, therefore, should be liable for Premier's actions. The fact remains, however, that the Daileys agreed to contract with Premier individually. Under *Kingsberry*, we cannot ignore the import of that agreement. Thus, the trial court erred in failing to direct a verdict for Fountainhead and Chateau Elan Realty on the Daileys' breach of contract and fraudulent conversion claims. And, because those two claims provide the only basis for a verdict against Fountainhead and Chateau Elan Realty, the Daileys are not entitled to recover litigation expenses from them.[18]

*Judgment reversed. Smith, C. J., and Miller, J., concur.*

DECIDED SEPTEMBER 23, 2003 —
RECONSIDERATION DENIED OCTOBER 21, 2003 — ▮▮▮▮▮▮▮

*Stewart, Melvin & Frost, William H. Blalock, Jr., Nancy L. Richardson*, for appellants.
*Henderson & Lipscomb, Quentin Henderson, Jr.*, for appellees.

---

[16] *Multi-State Contracting Corp. v. Midwest Indem. Corp.*, 252 Ga. App. 449, 450 (556 SE2d 524) (2001). See also OCGA § 10-6-60 ("The principal shall be bound for the care, diligence, and fidelity of his agent in his business, and hence he shall be bound for the neglect and fraud of his agent in the transaction of such business.").

[17] See id.

[18] See *Russell Corp. v. BancBoston Financial Co.*, 209 Ga. App. 660, 663 (6) (434 SE2d 716) (1993).