A06A1809. DUNN et al. v. VENTURE BUILDING GROUP, INC.
(642 SE2d 156)

ANDREWS, Presiding Judge.

Following a jury trial resulting in a verdict in favor of Venture Building Group, Inc. (Venture), sisters Annie Bell Dunn, Bessie M. Smith, and Tempy C. Walker appeal, contending that the trial court improperly denied their motions for directed verdict on Venture's claim for breach of a contract to sell real estate.

In determining whether the trial court erred by denying [the appellants'] motions for a directed verdict and motions for judgment n.o.v., this court must view and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict and judgment n.o.v. are not proper unless there is no conflict in the evidence as to any material issue

and the evidence introduced, with all reasonable deductions therefrom, demands a certain verdict.

(Footnote omitted.) *Irwin County v. Owens*, 256 Ga. App. 359, 360 (2) (568 SE2d 578) (2002).

Lisa Walker is the daughter of Tempy C. Walker and the niece of Annie Bell Dunn and Bessie M. Smith. Lisa Walker was a friend of Jocelyn Lyles, a real estate agent with Family Home Realty, and had asked Lyles in 2001 to assist her in helping her mother and aunts sell a strip of land at 143 Phillips Drive in McDonough for a road to a landlocked adjacent development. Lyles did so and attended the closing with Walker, her mother, and aunts. The deed for that strip of land was signed by the three women and the property transferred without any difficulty regarding title. Because Bertha Crawford, the mother of the three sisters and two deceased sons, had died without a will in 1953, an affidavit of descent was used during the 2001 closing. The affidavit reflected the 1953 death of Bertha Crawford and the deaths of her sons, James and Tom Crawford, 25 to 30 years prior to 2001. The three sisters had maintained possession of the property since the death of their mother on October 22, 1953, and had paid all taxes and other fees associated with it since then.

Because the three sisters were up in age, Lisa Walker thought it wise to explore selling the remainder of the property at 143 Phillips Drive while all three were still alive. In 2004, Lisa Walker asked Lyles to put up a for sale sign to see if there was interest in purchasing the land. No listing agreement was ever signed with Lyles by any of the three sisters or Lisa Walker.

Venture consisted of six family members and friends who wanted to invest in real estate in Henry County. Tammy Archer, the secretary-treasurer of Venture, and the others had pooled their savings in order to invest, but had no real estate experience. Prior to the transaction involved here, Venture had not entered into any other real estate deals. The land for sale sign at 143 Phillips Drive was noticed by someone on behalf of Venture and the phone number listed was called. Venture engaged Ronnie Messer with GMAC Mortgage to act as its agent in dealing with Lyles, whose number was on the for sale sign.

Messer dealt with Lyles regarding the property and he did not think he had ever spoken with Annie Bell Dunn. Pursuant to their discussions, Venture made an offer of $100,000 to purchase the property. A Lot/Land Purchase and Sale Agreement, dated May 15, 2004, was prepared using GMAC's pre-printed form. It was signed by Natalie Cain and Tammy Archer on behalf of Venture and by David Harris, an affiliate of Messer, as the selling broker.

The Venture contract was taken by Lyles to Lisa Walker, Tempy Walker, Dunn, and Smith. Only Dunn signed the contract. Lyles did not ask Tempy Walker or Smith to sign the document, thinking that, because Dunn was the oldest, her signature on the contract was sufficient. Dunn's name was typed onto the contract as seller and her signature appears as seller. Bessie Smith, who lived with Dunn, did not sign the contract nor did she authorize anyone else to sell the property on her behalf. Tempy Walker, who lived in Atlanta, did not sign the contract nor did she authorize anyone else to sell the property on her behalf.

On May 24, 2004, before the scheduled closing on the property, Tammy Archer was at a football game discussing the property when she was overheard by someone who asked about the property. The discussion resulted in an offer for the property from Structural Creations, Inc. to Venture of $180,000. A Purchase and Sale Agreement dated May 24, 2004, was signed on behalf of Structural. The offer was accepted two days later by Archer and Cain on behalf of Venture.

The bank which was providing financing for Venture required a title search on the property. During that search, questions arose about the children and grandchildren of the two deceased sons and any claims they might have on the property. By letter of June 3, 2004, notice of this issue was given to Dunn and her sisters and the closing date was postponed until July 2, 2004.

The complaint in this action was filed on June 11, 2004. On June 12, 2004, Dunn signed a Termination and Release Agreement regarding the sale, stating that "Seller cannot provide clear title due to additional time and expense." The agreement was also signed by Lyles and forwarded to Venture, which did not sign it but proceeded with the litigation.

Lisa Walker advised the law firm conducting the title search that one of her uncles had 11 children, some of whom had died. The others were scattered all over the country and it would be difficult to obtain quitclaim deeds from them all. Nonetheless, through Lisa Walker's efforts, by the end of July, 12 quitclaim deeds were obtained and filed, although some remained outstanding.

1. In their first enumeration of error, Tempy C. Walker and Bessie Smith argue that the trial court erred in failing to grant their motion for directed verdict based on OCGA § 13-5-30 (4), the Statute of Frauds.

As a general rule, where the exercise or performance of an agency is by written instrument, the agency must also be created by written instrument. OCGA § 10-6-2. Under the "equal dignity rule," the authority of an agent to execute an instrument required by the Statute of Frauds to be in writing must also be in writing. OCGA

§ 13-5-30 (4) (any contract for the sale of lands, or any interest in, or concerning lands, must be in writing); *Turnipseed v. Jaje*, 267 Ga. 320, 322 (1) (477 SE2d 101) (1996). "Thus, the authority of an agent to execute a contract for the sale of real estate must be evidenced by a writing. [Cits.]" Id. See also *Lee v. Green Land Co.*, 245 Ga. App. 558, 561 (538 SE2d 189) (2000); *Augusta Surgical Center v. Walton & Heard Office Venture*, 235 Ga. App. 283, 285 (1) (508 SE2d 666) (1998). Otherwise, the purpose of the Statute of Frauds would be frustrated. *Jones v. Sheppard*, 231 Ga. 223, 225 (200 SE2d 877) (1973).

Acknowledging that neither Smith nor Walker had executed any writing appointing Dunn as their agent, Venture argued that there was apparent authority, based on the testimony of Archer.

An agency relationship "arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." OCGA § 10-6-1.

Absent written evidence of agency, there may be apparent authority "when the *statements or conduct of the alleged principal* reasonably cause the third party to believe that the principal consents to have the act done on his behalf by the purported agent." (Citation and punctuation omitted; emphasis supplied.) *Augusta Surgical Center v. Walton & Heard Office Venture*, supra at 286 (2). Therefore,

> "[a]pparent authority is not predicated on whatever a third party chooses to think an agent has the right to do, or even upon what the agent says he can do, but must be based on acts of the principal which have led the third party to believe reasonably the agent had such authority." (Punctuation omitted.) *Thompson v. Gen. Motors Acceptance Corp.*, 193 Ga. App. 740, 741 (1) (389 SE2d 20) (1989). See *Vandiver v. McFarland*, 179 Ga. App. 411, 413 (346 SE2d 854) (1986).

*Holy Fellowship &c. v. Brittain*, 240 Ga. App. 436, 438 (1) (523 SE2d 93) (1999).

Archer testified that representations were made (although not by whom) that Dunn had authority to represent Smith and Walker, that Lyles said she had an agency agreement with the three sisters, and that it had been relayed to her agent (apparently Messer) that Dunn had authority to sign for Smith and Walker.

At best, these are assumptions made by Archer based on multiple layers of hearsay received from someone other than Dunn, Smith, or Walker. These hearsay statements, not coming within any exception to the hearsay rule, prove nothing. *Buice v. Buice*, 255 Ga. App. 699, 701 (566 SE2d 421) (2002).

"Where the only evidence that a person is an agent of another party is the mere assumption that such agency existed, or an inference drawn from the actions of that person that he or she was an agent of another party, such evidence has no probative value and is insufficient to authorize a finding that such agency exists." [(Punctuation omitted.) *First Nat. Bank of Gainesville v. Alvin Worley & Sons, Inc.*, 221 Ga. App. 820, 821 (2) (472 SE2d 568) (1996).]

*Ellis v. Fuller*, 282 Ga. App. 307, 309 (1) (638 SE2d 433) (2006).

The purchase and sale agreement here also contains a merger clause stating that it "constitutes the sole and entire agreement between the parties hereto and no modification . . . shall be binding unless signed by all parties to this Agreement. No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto." See, e.g., *Fountainhead Dev. Corp. v. Dailey*, 263 Ga. App. 677, 680 (588 SE2d 768) (2003).

Therefore, the trial court erred in not granting the motions for directed verdict and judgment notwithstanding the verdict of Bessie Smith and Tempy Walker.

2. In the second enumeration of error, appellants argue that the trial court also erred in denying their motion for directed verdict because Venture failed to put forth proof of the fair market value of the property in order to determine damages. Although this enumeration of error is moot as to Smith and Walker, based on our finding in Division 1, we consider it as it relates to the breach of contract claim against Dunn.

" 'It has long been the rule that the measure of damages for breach of a contract to sell land is the difference between the contract price and the fair market value of the land at the time of the breach. (Cits.)' (Emphasis supplied.) *Quigley v. Jones*, 255 Ga. 33 (334 SE2d 664) [(1985)]." *Widener v. Ashkouti*, 239 Ga. App. 530, 531 (3) (521 SE2d 215) (1999). See also *Mills v. Parker*, 267 Ga. App. 334, 335 (1) (599 SE2d 301) (2004).

Here, the sole evidence put forth by Venture regarding its damages was the May 24, 2004 offer to purchase the property by Structural Creations for $180,000. First, we note that there is no evidence that, as of that date, there had been any breach of the contract by Dunn. Second, even if there were such evidence, "testimony of the sale of the identical parcel at a different price and time fails to establish as a matter of law the precise market value as of the date of the breach." *Widener*, supra; see also *Jenkins v. Brice*, 231 Ga. App. 843, 846 (4) (499 SE2d 734) (1998).

Therefore, the trial court erred in not granting the motion for directed verdict or j.n.o.v. of Dunn on this ground.

3. We need not consider the remaining enumerations of error. *Judgment reversed. Barnes, C. J., and Bernes, J., concur.*

DECIDED FEBRUARY 8, 2007.

*Karla Y. Vogel*, for appellants.
*Smith, Welch & Brittain, William A. White*, for appellee.