[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-15322
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cv-01069-ELR

NATIONWIDE MUTUAL INSURANCE CO.,
as Successor in Interest by Merger to Harleysville Mut. Ins. Co.,

Plaintiff - Counter Defendant,

versus

ARCHITECTURAL GLAZING SYSTEMS, INC.,

Defendant - Cross Defendant -
Third Party Plaintiff - Appellant,

SUNBELT RENTALS, INC.,

Defendant - Counter Claimant - Cross
Claimant -Third Party Plaintiff - Appellant,

MARSHA TURNER, et al.,

Defendants,

SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA,

                                    Defendant - Cross Defendant - Appellee,

AGS WATERPROOFING, LLC., et al.,

                                    Third Party Defendants.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(September 23, 2016)

Before WILSON, ROSENBAUM and BLACK, Circuit Judges.

PER CURIAM:

Appellant Sunbelt Rentals, Inc. (Sunbelt) appeals the district court's order granting summary judgment in favor of Selective Insurance Company of South Carolina (Selective) on Sunbelt's crossclaims against Selective. Appellant Architectural Glazing Systems, Inc. (Glazing) appeals the district court's order denying its motion for summary judgment against Sunbelt on Sunbelt's crossclaims against Glazing. Glazing also argues that the district court erred in

2

granting summary judgment in favor of Selective on Sunbelt's crossclaims against Selective. After review,[1] we affirm.

## I. BACKGROUND

Glazing is a glazing contractor formed in 2002 and owned by Tommy Sizemore (Sizemore), Rick Langford (Langford), and Jacki Langford.[2] Glazing's business entails installing glass storefronts and windows in commercial and residential buildings. Waterproofing is a waterproofing contractor formed in 2007 by Sizemore and Langford. Waterproofing's business entails caulking and waterproofing work on windows and buildings. Glazing was managed by Sizemore and Langford, while Waterproofing was managed by an operations manager, Karl Turner, who was not an employee of Glazing. The two companies shared office space and Waterproofing paid a fee to use Glazing's administrative staff. Waterproofing also sometimes worked as a subcontractor for Glazing. Despite this overlap in ownership and operations, Glazing and Waterproofing were insured by different companies. Glazing was insured by Nationwide Mutual Insurance Company (Nationwide), while Waterproofing was insured by Selective.

In 2005, Glazing made credit applications to Sunbelt for the purpose of opening a rental account so that it could rent equipment from Sunbelt. The

---

[1] We review *de novo* a district court's grant of summary judgment, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir.1999)

[2] As the parties are familiar with the facts of this case, we will not recount them in detail. We include only those facts necessary to the discussion of each issue.

applications resulted in a Credit Agreement that established a rental account for Glazing and contained terms governing "all purchases/rentals made by Customer from Sunbelt." The Credit Agreement identified Glazing as the sole "Customer" associated with the rental account and listed Sizemore, Langford, and Jacki Langford as the "Authorized Renter(s)." By signing the Credit Agreement, Glazing agreed that each rental would be subject to the terms and conditions of Sunbelt's Rental Agreement, which terms and conditions were "incorporated into and made a part of" the Credit Agreement. Glazing agreed that the terms of the Rental Agreement would apply to "each and every rental of equipment and/or provision of labor furnished to Lessee, whether or not Lessee executes each such rental contract." The Credit Agreement further provided that terms associated with future rentals that were "inconsistent with or in addition to the terms and conditions of [the Credit Agreement]" would be "void and have no effect." Sunbelt assigned Glazing rental account number 432746.

After Waterproofing was formed in 2007, Glazing began to permit Waterproofing to use rental account number 432746 to rent equipment that Waterproofing needed for its own jobs. Sizemore and Langford authorized Karl Turner to order equipment and charge the rental to account number 432746. When Sunbelt invoiced Glazing for a rental, Jacki Langford would separate the invoices according to whether the equipment had been used by Glazing or Waterproofing.

4

Invoices for equipment used by Glazing were paid with checks issued on a Glazing checking account. Invoices for equipment used by Waterproofing were paid with checks issued on a Waterproofing checking account.

Sunbelt became aware of these practices as early as 2010. Sunbelt was aware that two companies associated with Sizemore and Langford were using account number 432746. Sunbelt also knew that some of the invoices sent out for Glazing were paid by Waterproofing. Yet Sunbelt never rejected a Waterproofing payment or requested that Waterproofing open its own rental account. Sunbelt continued to list Glazing as the "Customer" on its Rental Agreements, to interface with Glazing employees in connection with past-due payments, and to address its invoices to Glazing.

In November 2011, Sunbelt sent a letter to Glazing requesting an updated certificate of insurance in connection with account number 432746. The letter was addressed to Glazing and did not mention Waterproofing. Glazing responded by sending Sunbelt a certificate of insurance stating that Sunbelt was an additional insured under Glazing's policy with Nationwide. The certificate of insurance did not mention Waterproofing. Sunbelt did not request a certificate of insurance for Waterproofing.

On November 29, 2011, Karl Turner called Sunbelt and ordered an 80 foot boom lift on account number 432746. Sunbelt prepared a Rental Agreement

5

identifying the "Customer" renting the equipment as "432746" and "Architectural Glass Systems."[3]  On November 30, 2011, Sunbelt delivered the boom lift to Old Fourth Ward, the jobsite listed on the Rental Agreement, where Waterproofing was conducting a job.  A Waterproofing employee, Rigoberto Lopez, signed a Rental Agreement and accepted delivery of the boom lift.  The Rental Agreement listed Glazing as the "Customer" and incorporated the terms of the original "Customer executed" Credit Agreement.  The Rental Agreement contained a clause requiring the "Customer" to maintain liability insurance and "name Sunbelt as an additional insured" on the insurance policy.  It also required the "Customer" to indemnify Sunbelt in connection with the boom-lift rental.

On December 2, 2011,  during the course of Waterproofing's work at the Old Fourth Ward site, the boom lift overturned.  Karl Turner and Rigoberto Lopez were killed in the accident.  Thereafter, the families of Turner and Lopez filed suit against Sunbelt for damages associated with their deaths.  Sunbelt added Waterproofing and Glazing as third-party defendants, arguing that one or both of them have a duty to indemnify Sunbelt under the Rental Agreement.  Nationwide agreed to defend Glazing in that action subject to a reservation of rights.  Selective denied coverage and declined to defend Waterproofing.

---

[3] The parties agree that "Architectural Glass Systems" is a misnomer for Glazing that Sunbelt used in paperwork connected with account number 432746.

6

On April 2, 2013, Nationwide filed the present action against Sunbelt, Selective, Glazing, and other defendants, requesting relief in connection with the various insurance controversies.  Sunbelt filed a crossclaim against Selective requesting declaratory judgment that:  (1) Waterproofing is a party to the Rental Agreement; (2) Selective is required to provide coverage to Sunbelt for the boom-lift accident because Sunbelt is an "additional insured" under the insurance contract between Selective and Waterproofing; and (3) the insurance contract between Selective and Waterproofing requires Selective to provide coverage to Waterproofing for any and all indemnity obligations that Waterproofing owes Sunbelt under the Rental Agreement.  Sunbelt also filed a crossclaim against Glazing alleging that:  (1) Glazing is a party to the Rental Agreement; (2) the Rental Agreement requires Glazing to indemnify Sunbelt for any and all obligations associated with the boom-lift accident; and (3) Glazing breached the Rental Agreement by failing to obtain insurance coverage for Sunbelt in connection with the boom-lift rental.

Selective and Glazing filed motions for summary judgment.  The district court found that Glazing was a party to the Rental Agreement, that Waterproofing was not a party to the Rental Agreement, and that the Rental Agreement requires Glazing to indemnify Sunbelt in connection with the boom-lift accident.  *See Jurich v. Compass Marine, Inc.*, 764 F.3d 1302, 1304 (11th Cir. 2014) ("Summary

judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."). The district court therefore (1) denied Glazing's motion for summary judgment against Sunbelt on Sunbelt's crossclaim against Glazing; and (2) granted Selective's motion for summary judgment against Sunbelt on Sunbelt's crossclaim against Glazing. On October 26, 2015, the district court entered final judgment pursuant to a stipulation by the parties. Sunbelt and Glazing appeal.

## II.  DISCUSSION

### A.    *Sunbelt v. Glazing*

We first consider Sunbelt's crossclaim against Glazing. Glazing argues on appeal that the district court erred when it held that Turner and Lopez had "apparent authority" to rent equipment on Glazing's account and bind Glazing to the Rental Agreement. The district court found that Glazing knowingly permitted Waterproofing employees to rent equipment on Glazing's account, that all parties were aware of this practice, and that this course of dealing caused Sunbelt to reasonably believe that Turner and Lopez had authority to bind Glazing to Rental Agreements in connection with account number 432746. *See Dunn v. Venture Bldg. Grp., Inc.*, 642 S.E.2d 156, 159 (Ga. 2007) ("Apparent authority is . . . based on acts of the principal which have led [a] third party to believe reasonably the

8

agent had such authority.").  The district court therefore concluded that Glazing was a party to the November 30, 2011, boom-lift Rental Agreement.

We have reviewed the record and agree with the district court that Glazing was a party to the Rental Agreement.  The Credit Agreement for account number 432746 establishes that Glazing was the sole "Customer" associated with account number 432746, that each rental on the account was subject to the Credit Agreement along with any rental-specific agreements, and that terms and conditions "inconsistent with" the Credit Agreement would be "void and have no effect."  Thus, by authorizing Waterproofing to use account number 432746, Glazing communicated to Sunbelt that Waterproofing had authority to bind Glazing in connection with Glazing's agreed-upon obligations under the Credit Agreement.  Neither Glazing nor Waterproofing took action to disabuse Sunbelt of the belief that Waterproofing had such authority, despite numerous opportunities to do so.  *See Addley v. Beizer*, 423 S.E.2d 398, 402 (Ga. Ct. App. 1992) ("The authority of an agent in a particular instance may be established by the principal's conduct and course of dealing . . . ." (emphasis omitted)).  In particular, neither party asked Sunbelt to address invoices to Waterproofing or list Waterproofing as the "Customer" on the Rental Agreements.  When Sunbelt requested an updated certificate of insurance, Glazing provided a certificate of insurance for Glazing but not for Waterproofing.  Turner and Lopez never indicated that they worked for

9

Waterproofing or were renting the boom lift on Waterproofing's behalf. And finally, the boom-lift Rental Agreement Lopez signed listed Glazing as the "Customer" and incorporated the terms of the original "Customer executed" Credit Agreement. These facts demonstrate that Waterproofing had at least apparent authority to bind Glazing to the boom-lift Rental Agreement. *See Dunn*, 642 S.E.2d at 159; *Addley*, 423 S.E.2d at 402. We therefore affirm the denial of Glazing's motion for summary judgment against Sunbelt on Sunbelt's crossclaim against Glazing.

B.    *Sunbelt v. Selective*

We next consider Sunbelt's crossclaim against Selective. Sunbelt argues on appeal that (1) Selective has a duty to provide coverage to Sunbelt as an "additional insured" under its insurance contract with Waterproofing; and (2) Selective has a duty to indemnify Sunbelt because Waterproofing agreed to indemnify Sunbelt when Lopez signed the Rental Agreement. The insurance contract between Selective and Waterproofing provided that Waterproofing could add "additional insured[s]" to the policy by "agree[ing] in a written contract, written agreement, or written permit to add [the entity] as an additional insured on [the] policy." The contract further provided that "[t]he provisions of this coverage extension do not apply unless the written contract or written agreement has been executed." The contract defines "executed" as "signed by the named insured."

10

Sunbelt argues that Waterproofing added Sunbelt as an "additional insured" when Lopez—a Waterproofing employee—signed the Rental Agreement promising to maintain liability insurance and "name Sunbelt as an additional insured" on the insurance policy.  As we concluded *supra*, however, Waterproofing was acting as Glazing's agent when it rented equipment on account number 432746.  Because Lopez signed the Rental Agreement on behalf of Glazing—not Waterproofing— his signature is insufficient to add Sunbelt as an additional insured to Waterproofing's insurance policy.  We reject the contention that Selective has a duty to indemnify Sunbelt on behalf of Waterproofing for similar reasons.  The Rental Agreement provides that "CUSTOMER INDEMNIFIES . . . SUNBELT." But Glazing—not Waterproofing—is the entity bound by that promise.  We therefore affirm the order granting summary judgment in favor of Selective on Sunbelt's crossclaims against Selective.

**AFFIRMED.**